JOANNA SHREVE et al.

*v.*

THOMAS E. HARVEY, administrator, &c., et al.

[Decided May 5th, 1908.]

1. Four sisters and four brothers being seized in fee of a tract of land, the sisters conveyed their undivided interests, amounting in all to one-half of the fee, to their four brothers, three of whom, being of age, executed four several bonds to their sisters respectively, and gave them collectively a mortgage upon the same premises, to secure a portion of the purchase-money; the brother, who was a minor at the time the mortgage was given and who did not join therein, came of age within two years after the giving of the mortgage, and lived for more than thirty years thereafter and died, devising his one-fourth interest to his

three brothers who made the mortgage; and the mortgage is now being foreclosed.—*Held*, that the outstanding undivided one-fourth interest in the premises did not come under the lien of the mortgage when the entirety of the fee vested in the three brothers, the mortgagors, by reason of the devise to them of the one-fourth by their brother upon his death, and that the complainants' mortgage is still a lien only upon the three undivided one-fourth parts and interest in the mortgaged premises; and this because there is no covenant of seizin or for title in the mortgage, and no intention is apparent that the outstanding one-fourth interest should ultimately fall within the mortgage; hence no estoppel has been worked.

2. On December 14th, 1858, the three brothers, the mortgagors, made a deed to R. P. for a portion of the mortgaged premises. The deed from the sisters to the brothers, dated December 9th, 1858, was recorded May 3d, 1860. The mortgage from the brothers to the sisters, dated January 1st, 1859, was recorded May 3d, 1860. The deed to R. P. was recorded October 9th, 1860. There were other conveyances of portions of the mortgaged premises as follows: To S. A., May 1st, 1860; to G. B., July 23d, 1861; to M. K., March 31st, 1874. The deed to S. A. was recorded September 10th, 1860; the deeds to G. B. and M. K. were both made and recorded after the making and recording of the mortgage. These tracts, by sundry mesne conveyances and devolutions of title, have become vested in others than the original grantees, but the original grantees and their successors in title, including the present owners, have been for more than twenty years last past in the full exclusive and actual possession of their several distinct parcels of mortgaged premises without admitting the title of the mortgagees and with no claim for principal or interest having been made against them and without any entry by any holder of the mortgage; they have improved their tracts by the erection of houses and other buildings thereon, have paid the taxes upon their lots and exercised in every particular all the usual acts of ownership over the same.—*Held*, therefore, that the mortgage is no longer any lien at all upon any of these several tracts.

3. Two of the brothers, being then seized of the entire fee of the premises, by virtue of their individual holdings and under the will of their deceased brother, and by a conveyance by their surviving brother, in the years 1891, 1895 and 1903 made three other several mortgages upon the premises to several mortgagees. Pending this suit one of the brothers died intestate and his interest in the mortgaged premises descended to his heirs-at-law, who are his surviving brother, and his nephews and nieces, children of his deceased brothers and sisters. They, the surviving brother and those nephews and nieces, are the owners of the interest in the mortgage of one of the sisters in certain proportions, as well as being owners of the fee of the mortgaged premises.—*Held*, as against the mortgages of 1891 and 1895 (the question not being raised as to the mortgage of 1903) there is no merger of their interests in the original mortgage of 1859 into their title to the fee in the lands, because the subsequent mortgages are presumed to have been taken with reference to the state of the record, which, in the case of the one of 1891 would have disclosed the existence of the complainants' mortgage and no interest

therein at that time in the now owners of the fee, and there being no unity of title as mortgagees and owners there could have been no merger at that time; and, since acquiring title to such interest in the mortgage they have done nothing themselves to cause a merger; and as to the mortgage of 1895 there is no merger, because, when it was given while the two brothers, who were owners of the fee, were already beneficiaries of one of the original mortgagees, yet they did nothing themselves whereby they can be held to have harbored any intention to surrender their interests in the original mortgage, which they derived as legatees, in favor of the mortgage of 1895.

4. Rule 224 of this court, promulgated in pursuance of section 91 of the Chancery act (*P. L. 1902 pp. 510, 540*), provides for the only allowance by way of fee for counsel for the complainant that can be made in a foreclosure suit, litigated or *ex parte.* Whatever the complainants' counsel is entitled to beyond the amount provided for in rule 224, he will have to collect from his clients.

---

On final hearing on bill to foreclose, answers and agreed state of facts.

*Mr. Eckard P. Budd,* for the complainants.

*Mr. Charles Ewan Merritt,* for the defendants Annie R. Antrim, administratrix, &c., and Charles Ewan Merritt, executor, &c.

*Mr. Linton Satterthwait,* for the defendants Elizabeth Page, Lawrence L. Gratz, Anna G. Keller, Anna D. Keller, Maggie M. Keller, Anna E. Keller, Mary Keller, Marion Keller, Lillie V. Keller and Lillie V. Keller, guardian.

*Mr. Samuel A. Atkinson,* for the defendants James Tallman, Sarah A. Hancock and Mary F. Tallman, an infant by Elmer L. Tallman, guardian.

WALKER, V. C.

This is a litigated and complicated foreclosure, involving these questions: *First,* whether an outstanding interest in the mortgaged premises passed by way of estoppel when the mortgagors afterwards acquired title; *second,* whether distinct parcels of the mortgaged premises conveyed to third persons, who have

been in the exclusive possession of their several tracts for over twenty years, and who improved the same, without recognizing the mortgage, and without any claim on behalf of the mortgagees being made upon them, are still subject to the lien of the mortgage; *third,* whether certain interests in the mortgage acquired by owners of the fee by bequest from certain of the mortgagees have merged; that is, whether their interests in the mortgage have merged in the fee for the benefit of subsequent mortgages, and *fourth,* the amount that may be allowed counsel for the complainants to be taxed in the costs in such a case as this.

On December 9th, 1858, Sarah H. Shreve, Mary E. Harvey, Charlotte H. Biddle, and Elizabeth Harvey, the younger, Peter E. Harvey, Amos E. Harvey, Thomas B. Harvey and William T. Harvey were seized in fee, as tenants in common, of a certain farm in the township of Mansfield, Burlington county, of which Peter Harvey, their father, had lately died seized. Peter Harvey died intestate, and the persons named were his children and heirs-at-law, each one being seized of an undivided one-eighth part of the farm, subject to the estate in dower of their mother, Elizabeth Harvey, the elder.

On the same day, December 9th, 1858, Sarah H. Shreve and Charles M. Shreve, her husband, Mary E. Harvey, Charlotte H. Biddle and Israel Biddle, her husband, and Elizabeth Harvey, the younger, conveyed all their undivided half part of the farm to Peter E. Harvey, Amos E. Harvey, Thomas B. Harvey and William T. Harvey, by deed dated the same day, December 9th, 1858, and which was recorded March 21st, 1859, in the office of the clerk of Burlington county. After the deed was executed and delivered, the ownership of the farm was vested in Peter E. Harvey, Amos E. Harvey, Thomas B. Harvey and William T. Harvey, as tenants in common, each one of them being then seized of an undivided one-quarter interest therein. At this time Peter E. Harvey, Amos E. Harvey and Thomas B. Harvey were all of age, and William T. Harvey was a minor. On January 1st, 1859, Peter E. Harvey, Amos E. Harvey and Thomas B. Harvey, the three adult brothers, in order to secure the payment of a portion of the purchase price of the farm, executed to their sisters, Sarah H. Shreve, Mary E. Harvey, Charlotte H. Biddle

and Elizabeth Harvey, the younger, four several bonds, respectively, and also a mortgage on the lands conveyed to secure those bonds. The mortgage just referred to·contains no covenants of seizin or for title, nor does it even recite the source of title of the mortgagors. It, however, described the farm in its entirety, and not an undivided interest therein.

The fact that William T. Harvey was under age at the time of the making of the mortgage by his adult brothers to his sisters did not absolutely incapacitate him from joining in the conveyance. He could have joined his brothers in the mortgage and ratified his act after he attained his majority. He must have been nearly of age at the time the mortgage was made, for on July 23d, 1861, he joined his mother, the widow, and his brothers, Peter E. Harvey, Amos E. Harvey and Thomas B. Harvey, in a conveyance of a portion of the mortgaged premises to George Black. He remained seized of the fee in an equal undivided one-fourth part of the premises until his death, until August 1st, 1889, and by his last will and testament devised the same to his brothers last named, whereupon ·the mother having died on August 10th, 1880, and her estate in dower in the premises thereby having terminated, the three brothers became seized of the entire fee in the premises in these proportions: Peter E. Harvey, four-ninths; Amos E. Harvey, four-ninths, and Thomas B. Harvey, one-ninth, being the one-third of the one-third devised to him by his brother, William T. Harvey, he, Thomas B. Harvey, having on March 25th, 1868, conveyed his one-fourth interest to his brothers, Peter E., Amos E. and William T. Harvey.

It will be remembered that the complainants' mortgage conveyed only the three undivided fourth parts of the premises described therein, and the first question is, did the outstanding undivided one-fourth interest in those premises come under the lien of the mortgage when the entirety of the fee vested in the mortgagors under the devise to them of that one-fourth by their brother, William T. Harvey, upon his death in 1889? That it did not, and that the complainants' mortgage is still a lien only upon the three undivided fourth parts, and interest in the mortgaged premises is, to me, clear.

The case, upon this head, comes within the reasoning of Chancellor Runyon in *Smith* v. *De Russy, 29 N. J. Eq. (2 Stew.) 407.* The learned chancellor says (at *p. 408*) : "There is no covenant of seizin or warranty in the mortgage to her. And, although the entire premises are described in the mortgage as being mortgaged thereby, yet the description of the property in that instrument is followed by the statement that the property mortgaged is the same which was conveyed by the complainant to the mortgagor by deed of even date with the mortgage, and that the mortgage was given to secure the payment of part of the purchase-money of that conveyance." In the case under consideration, the entire premises are described in the mortgage as being mortgaged thereby, and, while there is no recital that the premises conveyed are the same premises which were granted by the mortgagees to the three mortgagors, together with their brother who did not join, nevertheless, the fact is, that such was the case, and that the conveyance had been made only three weeks before the mortgage was given, and, therefore, the mortgagees knew perfectly well that they were receiving a conveyance by way of mortgage security from three of their brothers, whereby title passed only to the three undivided fourth parts of the mortgaged land. If, by reason of a family arrangement, regarding the settlement of the estate of their father, it had been understood that William T. Harvey's interest in the lands was to be mortgaged to his sisters, then, as I have intimated, he doubtless would have joined in the mortgage, being within two years of his majority, and would not have repudiated his act afterwards, but would have ratified and confirmed it, or, he would, upon attaining his majority, have executed to his sisters a mortgage upon his interest in the premises. That he did neither of these things, but, on the contrary, retained the fee in his one-fourth interest until his death, over thirty years after the mortgage was given, then devised it to these three brothers by will, is, to my mind, conclusive evidence that it was never intended that his, William T. Harvey's, outstanding interest in the estate, should ever fall within the mortgage given by the three brothers to the four sisters on January 1st, 1859, or become in any way subject to its lien.

In *Hannon* v. *Christopher, 34 N. J. Eq.* (*7 Stew.*) *459*, an after-acquired interest was held to pass by estoppel as the result of a conveyance by deed of bargain and sale without covenants, because it was found to be the intention of the parties to convey it, and it was held that whenever it clearly appears that such was the intention of the parties it is the duty of the court to adjudge an estoppel. This case is an authority for the view I take with reference to the mortgage under discussion, because, in the case at bar, it not only does appear to have been the intention of the parties that the after-acquired interest in the lands should pass, but, on the contrary, to my mind, it clearly appears that such was not the intention, and, therefore, no estoppel can be worked.

There was excepted from the mortgage a small tract expressed to be conveyed to William C. Taylor, mentioned as a lot adjoining Thomas Page's lot. A conveyance of this lot to Taylor was made by the three brothers, the grantees of the mortgagees, on December 14th, 1858, and on the same date the same grantors made a deed to Richard Page for another portion of the mortgaged premises. The deed from the sisters to the brothers was recorded May 13th, 1860. The deed from the same grantors, the brothers, to William C. Taylor, was recorded April 6th, 1859. The deed to Page October 9th, 1860. The mortgage from the brothers to the sisters was recorded May 6th, 1860.

Besides the conveyances to Richard Page and William C. Taylor, there were conveyances made for other portions of the mortgaged premises, as follows: By Elizabeth Harvey, widow, Peter E. Harvey, Amos E. Harvey and Thomas B. Harvey, to Samuel Asay, May 1st, 1860; by the same parties, William T. Harvey joining them, to George Black, July 23d, 1861; by Peter E. Harvey, William T. Harvey and Amos E. Harvey to Mary Kirkbride, March 31st, 1874.

It will be noticed, in passing, that the conveyance to Taylor was of an undivided three-fourths part of the premises; the same to Page; the same to Asay; while that to Black was of four-fourths, or the whole, and that to Kirkbride was for three-thirds, or the whole. No question is raised in respect of the *quantum* of the estate vested in any of these grantees.

The Asay tract was by sundry mesne conveyances and devolutions of title finally vested in the defendants Anna G. Keller, Anna D. Keller, Maggie M. Keller, Amy E. Keller, Mary Keller, Marion Keller and Lillie V. Keller, which tract is mortgaged to the defendant Lawrence L. Gratz, to secure the sum of $700. The Page tract was, in like manner, finally vested in the defendant Elizabeth F. Page. The Black tract was, in like manner, finally vested in the defendants James Tallman, Sarah A. Hancock and Mary E. Tallman. The Kirkbride tract was, in like manner, finally vested in the defendant Charlotte B. Biddle, subject to a mortgage for $2,000 given to John Bishop, trustee, by Joseph W. Biddle, the then owner, in 1891, who, John Bishop, the trustee, has departed this life without anyone having been appointed to succeed him in the trust, and Charlotte B. Biddle, the owner of the tract, claims an interest in the mortgage because she is entitled to the income of the same during her life, and the defendants Eliza Black Deacon, Anna W. Newbold, Marion E. Ellis, Bessie R. Biddle (Luce) and Sue Black Biddle, claim to have an interest in it after the death of Charlotte B. Biddle, who is their mother. The only question in this suit regarding these lots is, are they subject to the lien of the complainants' mortgage?

The deed to Page was made December 14th, 1858, two weeks before the complainants' mortgage, which was made January 1st, 1859, and recorded May 3d, 1860, while the deed to Page was not recorded until October 9th, 1860. The complainants claim that their mortgage is a lien against the property sold to Page because his deed was not recorded as required by law before the recording of the mortgage. The complainants also claim that their mortgage is a lien against the property sold to Asay because his deed was not recorded as required by law before the recording of the mortgage. Asay's deed bears date May 1st, 1860, three days before the recording of the mortgage, but the deed was not recorded until September 10th, 1860. The complainants also claim that their mortgage is a lien against the property sold to Black and Kirkbride because those two deeds were both given after the making and recording of the mortgage. If the mortgage be a lien upon these tracts it would only be valid against the three undivided fourths interest in them,

because, at the time the conveyances just mentioned were made, William T. Harvey's share had not vested in his three brothers who made the mortgage.

However, the claims of the complainants concerning these tracts of land are not valid because it is admitted that none of the present owners in fee of the portions of the mortgaged premises described in these deeds, nor their grantors, had actual knowledge of the mortgage when the purchase of the lots was made and the improvements, which are many and valuable, were placed upon the grounds; that the mortgagees had every opportunity to witness the improvements while being made, as they lived in the neighborhood; that the present owners and their grantors have been in possession since the time of the conveyances above mentioned, continuously and without any actual knowledge of the mortgage, until either a short time before or at the beginning of these foreclosure proceedings; that none of them have ever paid any interest upon or in any way recognized the existence of the complainants' mortgage; that neither the mortgagees nor anyone representing them ever made demand upon the owners in fee of these lots, or their grantors, for any payment on the mortgage by way of principal or interest; that the mortgagees never gave notice to any of the owners of the tracts, or their grantors, when the houses and buildings were being erected, or to any occupant of the premises, that they claimed any lien by mortgage encumbrance or otherwise upon any of these tracts; that the owners of the tracts in fee, and their grantors, have had the exclusive and notorious possession of the lands, and have collected for their own use and enjoyment all the rents, issues and profits thereof; have paid the taxes upon the lots and have exercised in every particular all the usual acts of ownership over the same; that no entry has been made upon any of these several tracts by any holder of the mortgage.

Thus it will be seen that the present owners of these tracts, and their predecessors in title, have been for more than twenty years in the full, exclusive and actual possession of these distinct parcels of the mortgaged premises without admitting the title of the mortgagees, with no claim for principal or interest having

been made upon them, and without entry by any holder of the mortgage, and, therefore, the mortgage is no lien at all upon any of these several tracts, even if the mortgage debt has been kept alive by payment of interest by the owners of other portions of the mortgaged premises. *Ely* v. *Wilson, 61 N. J. Eq. (16 Dick.) 94; Willis* v. *Fields, 62 N. J. Eq. (17 Dick.) 271.*

On February 2d, 1891, Thomas B. Harvey conveyed his undivided one-ninth interest in the mortgaged premises to his brothers, Peter E. Harvey and Amos E. Harvey, and they thereupon became seized of the entire fee in these proportions, namely, Peter E. Harvey an undivided five-ninths part and Amos E. Harvey an undivided four-ninths part.

On February 7th, 1891, Peter E. Harvey and Amos E. Harvey executed a mortgage on the premises in question to the Mount Holly Insurance Company to secure the sum of $1,500. On April 29th, 1895, the Mount Holly Insurance Company assigned this bond and mortgage to Thomas Antrim, who died intestate, and whose administratrix, Annie R. Antrim, is now in possession of the bond and mortgage and entitled to realize upon it. This mortgage describes the same lands as are in the complainants' mortgage, the courses and distances being the same, excepting thereout, however, the lots sold to George Black, William C. Taylor and Mary Kirkbride, three in number.

On March 26th, 1895, Peter E. Harvey and Amos E. Harvey executed a mortgage on the premises in question, together with other lands, to Shreve Antrim, to secure the sum of $4,000. Shreve Antrim died leaving a last will and testament, of which Charles Ewan Merritt, Esquire, is the executor, and who is now in possession of the bond and mortgage and entitled to realize upon it. This mortgage described the same lands as are in the complainants' mortgage, with the addition of a tract which the Harveys purchased July 10th, 1869, which joins the former tract, and is merged in the description. Out of this mortgage are expressly excepted the lots sold to George Black, R. H. Page, William C. Taylor and Mary Kirkbride, four in number.

On January 29th, 1903, Peter E. Harvey and Amos E. Harvey executed a mortgage on the premises in question, together with other lands, to Thomas B. Harvey, to secure the sum of

$1,000. Thomas B. Harvey departed this life leaving a last will and testament of which Mary S. Harvey and Thomas E. Harvey are the executors, and who are now in possession of the mortgage and entitled to realize upon it. The description in this mortgage is the same as in the one given to Shreve Antrim. There is expressly excepted therefrom the lots conveyed to George Black, R. H. Page, William C. Taylor, Samuel Asay and Mary Kirkbride, five in number.

Each of these three mortgages of February 7th, 1891, March 26th, 1885, and January 29th, 1903, conveyed the entire fee in the farm, subject to the lien of the complainants' mortgage on the undivided three-fourths of the premises.

All of the sisters, the holders of the bonds and the original mortgagees, are dead, and all of the brothers, the owners of the fee and three of whom were the original obligors and mortgagors, are dead, except Amos E. Harvey, who was one of the owners of the fee and one of the original obligors and mortgagors.

It becomes important now to ascertain who are the present holders and owners of the bonds, and who are, therefore, commensurately interested in the original mortgage, for the purpose of deciding who are entitled to the proceeds of the sale to be made of the mortgaged premises, and also for the purpose of deciding another question, namely, that of merger, which has been raised as to certain interests in the mortgaged premises.

The bond given to Sarah H. Shreve is now owned by the complainant Joanna Shreve, and there is due thereon the principal sum of $500 with interest at six per cent., from March 9th, 1897. The bond given to Charlotte H. Biddle is now owned by the complainant Elizabeth B. Conrow, and there is due thereon the principal sum of $875 with interest at six per cent., from April 1st, 1890. The bond given to Elizabeth Harvey is now owned by the complainant John H. Hutchinson, her administrator *cum testamento annexo,* and there is due thereon the principal sum of $2,693 with interest at six per cent. from January 1st, 1900. The bond given to Mary E. Harvey is now owned by the following persons and in the following proportions: Complainants Joanna Shreve, Mary H. Biddle and Elizabeth B. Conrow, one-tenth part each; the defendants Amos E. Harvey and

Thomas E. Harvey, administrator of Peter E. Harvey, deceased, one-fifth part each; and the defendants Caleb E. Shreve, Thomas E. Harvey and John S. C. Harvey, one-tenth part each, and there is due thereon the principal sum of $3,143 with interest at six per cent. from January 1st, 1900.

It would be to no purpose to trace the various steps by which the persons just named became entitled under the will of Mary E. Harvey, deceased, to her bond in the proportions just set out.

Amos E. Harvey is the only original mortgagor still living. The premises in question, it will be remembered, were owned by him and his brother, Peter E. Harvey, at the time of the latter's death pending this suit. He, Peter E. Harvey, died intestate, and his interest in the mortgaged premises descended to his heirs-at-law, who are his brother, Amos E. Harvey, and his nephews and nieces, Joanna Shreve, Caleb E. Shreve, Mary H. Biddle, Elizabeth B. Conrow, Thomas E. Harvey and John S. C. Harvey.

The surviving brother and nephews and nieces of Mary E. Harvey just named, are, as above stated, the owners of interests in the bond of Mary E. Harvey in the proportions mentioned, as well as being owners of the fee of the mortgaged premises.

In this situation of affairs the defendants Annie R. Antrim, administratrix of Thomas Antrim, deceased, who is the holder and owner of the bond and mortgage made by Peter E. and Amos E. Harvey to the Mount Holly Insurance Company, February 7th, 1891, and Mr. Merritt, the executor of Shreve Antrim, who is the holder and owner of the bond and mortgage made by Peter E. Harvey and Amos E. Harvey to Shreve Antrim, March 26th, 1895, contend that such interest in the mortgage formerly owned by Mary E. Harvey as is owned by her beneficiaries above mentioned are merged into their legal title to the property by reason of their ownership of portions of the fee in the lands. No such contention is set up in behalf of the mortgage of 1903, given by Peter E. and Amos E. Harvey to Thomas B. Harvey.

When the Mount Holly Insurance Company took its mortgage from Peter E. Harvey and Amos E. Harvey (February 7th, 1891), it is presumed to have taken it with reference to the record title which disclosed the existence of complainants' mort-

gage. *Bingham* v. *Kirkland, 34 N. J. Eq.* (*7 Stew.*) *229.* If Mary E. Harvey, who was alive when this last-mentioned mortgage was given, had so disposed of her property that none of it would go to her brother, Amos E. Harvey, and to the nephews and nieces of her brother, Peter E. Harvey, then the mortgage of the Mount Holly Insurance Company would remain what it was when made, namely, a second mortgage on the three-fourths interest in the farm, being, of course, a first mortgage on the other one-fourth. That this brother and these nephews and nieces are the recipients of Mary E. Harvey's bounty, ought not, in my judgment, to operate for the benefit of the Mount Holly Insurance Company. Her bequest to them of certain interests in this bond, and an accompanying interest in the mortgage, is a gift to them of so much of her property, and cannot enure to the benefit of the Mount Holly Insurance Company unless these beneficiaries voluntarily forego their benefits. This they have done.

When the other mortgage, the one to Shreve Antrim, was made, Mary E. Harvey was dead, and her sister, Elizabeth Harvey, who was the beneficiary of her estate for life, was still living, and upon her death, by the will of Mary E. Harvey, her, Mary E. Harvey's, interest in her bond went to her brothers and sisters and children of deceased brothers and sisters, share and share alike. Her brother, Peter E. Harvey, was living at her death and inherited a beneficial interest in her bond, which has since passed to his surviving brother and nephews and nieces. A search of the records at the time this last-mentioned mortgage was given would have disclosed the existence of the complainants' mortgage, and an appropriate search and investigation would also have disclosed the death of Mary E. Harvey and the interests of her brothers, nephews and nieces in her share of the first bond and mortgage.

While the doctrine of merger can be urged against the beneficiaries of Mary E. Harvey with reference to the Shreve Antrim mortgage with much more effect than as against the mortgage of the Mount Holly Insurance Company, by reason of the facts just stated, still, I am also against the view that there has been any merger with reference to the Shreve Antrim mortgage.

If the Harveys had paid off their indebtedness to their sisters,

they would not be permitted to keep these bonds and their corresponding interests in the mortgage alive as against the subsequent mortgagees, but, in such case, the subsequent mortgages would be moved up in the line of preference. This happens daily with reference to mortgages in consequence of payment of prior encumbrances. No equities are, in such cases, ordinarily involved, and none are involved in this transaction. Merger is essentially a matter of intention and where the intention to merge does not exist the doctrine is not operative. *Andrus* v. *Vreeland, 29 N. J. Eq. (2 Stew.) 394.* Neither the Mount Holly Insurance Company nor Shreve Antrim have been in anywise prejudiced by the bequests made by Mary E. Harvey, deceased. No equities are to be subserved by holding that those bequests, so far as they represent interests in the bond and mortgage, owned by her in her lifetime, are to be extinguished in favor of the Mount Holly Insurance Company and Shreve Antrim, the subsequent mortgagees. One of the conditions under which merger will operate upon estates is that the two estates, the greater and the lesser (in such a case as this, the fee) vested in the same person at the same time. *20 Am. & Eng. Encycl. L. (2d ed.) 589; Wills* v. *Cooper, 25 N. J. Law (1 Dutch.) 137, 164.* There was not at the time the mortgage was given to the Mount Holly Insurance Company any interest in the beneficiaries of Mary T. Harvey in the lands, in succession to her as mortgagee, her estate at that time being in her sister, Elizabeth Harvey, the life tenant, and, therefore, there could have been no merger with reference to that mortgage at that time; much less could there have been any merger worked by act and operation of law since that time. While the present owners of the bond of Mary E. Harvey and her commensurate interest in the mortgage were such at the time the second mortgage, namely, that to Shreve Antrim, was given, nevertheless, their ownership was as beneficiaries of the estate, and had they done nothing themselves to in anywise prejudice the position of Shreve Antrim, the mortgagee, nor can they be held to have harbored any intention, which was not shown, to surrender the benefit they derived as legatees. Therefore, equally, there is no merger with reference to this second mortgage.

There is now due to Annie R. Antrim, administratrix, upon the mortgage given to the Mount Holly Insurance Company in 1891, the principal sum of $1,500, with interest at six per cent., from March 22d, 1900. There is now due to Charles Ewan Merritt, Esq., executor, upon the mortgage given to Shreve Antrim in 1895, the reduced principal sum of $2,100, with interest at six per cent., from May 12th, 1900, plus interest on the original principal sum of $4,000, from March 26th to May 12th, 1900, the principal having been reduced to $2,100 on the last-mentioned date. There is now due to Mary S. Harvey and Thomas E. Harvey, executors, upon the mortgage given to Thomas B. Harvey in 1903, the principal sum of $1,000, with interest at six per cent. from its date, January 29th, 1903.

Directions will now be given as to the form of the decree, as follows: The whole of the mortgaged premises, or so much thereof as may be necessary, will be sold to raise and satisfy, in the first place, the bonds given to the sisters out of the three-fourths part of the proceeds of sale, to be distributed as follows: To Joanna Shreve (on the bond given to Sarah H. Shreve) the sum of $500, with interest at six per cent., from March 9th, 1907; to Elizabeth B. Conrow (on the bond given to Charlotte H. Biddle) the sum of $875, with interest at six per cent., from April 1st, 1900; to John H. Hutchinson, administrator *cum testamento annexo* (on the bond owned by Elizabeth Harvey), the sum of $2,693, with interest at six per cent., from January 1st, 1900; to Joanna Shreve, Mary H. Biddle and Elizabeth B. Conrow, Caleb E. Shreve, Thomas E. Harvey and John S. C. Harvey, one-tenth each, and Amos E. Harvey and Thomas E. Harvey, administrator of Peter E. Harvey, deceased, one-fifth each (on the bond given to Elizabeth Harvey) of the sum of $3,143, with interest at six per cent., from January 1st, 1900. If sufficient money is not raised to pay these bonds in full, the distribution will be made *pro rata*. In the second place, the mortgage of the Mount Holly Insurance Company out of the one-fourth portion of the proceeds of sale; in the third place, the mortgage of Shreve Antrim out of the one-fourth portion of the proceeds of sale; in the fourth place, the mortgage of Thomas B. Harvey out of the one-fourth part of the proceeds of sale. If any deficiency

should exist in the payment of the second, third or fourth mortgages, and any surplus should remain after the payment and satisfaction of the first mortgage, the surplus should be applied to the second, third and fourth mortgages, respectively, *pro tanto.*

The complainants' taxed costs and a counsel fee, to be ascertained according to rule 224 of this court, will be paid out of the three-fourths portion of the proceeds of sale, representing the first and original mortgage, before any payment is made upon the bonds secured by that mortgage. The taxed costs of answering defendants, mortgagees, will be added to the amounts provided for them in the decree and paid out of the proceeds of the sale of the one-fourth part of the premises, or out of the surplus of the proceeds of the three-fourths part, if any there be, and any deficiency remains in the payment of the defendants' mortgages.

The complainants' counsel has asked for a special allowance by way of counsel fee. I regret that I cannot comply with his request. By the ninety-first section of the Chancery act (*P. L. 1902 pp. 510, 540*), it is provided that the counsel fee in foreclosure suits to be included in the complainants' taxed costs shall be such percentage, not exceeding five per cent. of the amount decreed, as the chancellor may by general rule, from time to time, prescribe. Rule 224 was promulged in pursuance of this statutory direction, and, as it makes no distinction between litigated and *ex parte* foreclosures; it comprehends both classes. This I regret, for, in the present instance, I would recommend an allowance for complainants' counsel. He has rendered important services, not only to the complainants but to the defendants, in clearing up the title to the lands in question and procuring a decree for their sale and the satisfaction of the various liens above mentioned, and for this reason no costs will be allowed any of the defendants who have successfully answered the complainants, that is, those defendants who own the lots which have been exonerated from the lien of the mortgage. Counsel for the complainants must look to his clients for his extra allowance in this cause. That he is entitled to an allowance is clear (*Strong & Sons* v. *Mundy, 52 N. J. Eq. (7 Dick.) 833*), and if I were at liberty to award it I would hear the parties on the question of

the. amount, of such counsel fee, and in advising the decree in this cause would report to the chancellor what is a reasonable sum to be allowed. *McMullin* v. *Doughty, 68 N. J. Eq. (2 Robb.) 776, 780.* The execution may be issued to a master owing to the involved and complicated distribution to be made of the proceeds of sale.