746 A.2d 1097

ALFRED J. LUCIANI, PLAINTIFF, v. HILL WALLACK
AND MATRIX CAPITAL BANK, DEFENDANTS.

Superior Court of New Jersey
Chancery Division
Atlantic County

Decided December 15, 1999.

Alfred J. Luciani, pro se.

*Dakar R. Ross*, for defendants (*Hill Wallack*).

GIBSON, J.S.C.

## I. *ISSUE*

This case requires the court to reexamine the standard by which one calculates counsel fees in a mortgage foreclosure action. More precisely, the question is whether *R. 4:42–9* permits the court to exercise discretion with respect to the amount of the award. Also at issue is whether the resolution of this question is influenced by the Fair Foreclosure Act, *N.J.S.A. 2A:50–53*, to *50–68*. Procedurally, these questions are before the court on cross-motions for summary judgment.

## II. *NATURE OF ACTION AND PROCEDURAL HISTORY*

This is a suit by the debtor on a residential mortgage, which mortgage was the subject of an earlier foreclosure action. Although plaintiff satisfied the underlying debt prior to the entry of judgment in that action, he did so under protest, contending that the pay-off figure demanded by the mortgagee, including the attorney's fee component, was excessive. He now seeks an accounting and restitution for any overpayment.

At the conclusion of the oral argument on the current cross-motions, I denied defendants' motion to dismiss and granted plaintiff's motion for an accounting from both the lender and its law firm.[1] I reserved decision on the rescission question as well as with regard to the appropriate standard for assessing the amount of the legal fees. Each defendant provided a responsive accounting thereafter and as part of that process, the lender admitted an overcharge and agreed to restitution. However, the counsel fee issue remained unresolved.

### III. *FINDINGS OF FACT*

Both parties agree that the material facts are not in dispute. Plaintiff, Alfred J. Luciani (hereafter Luciani) is the former owner of the residential property known as 2809 Sunset Avenue, Longport, N.J. Prior to its sale to a third-party in 1999, that property was subject to a first mortgage in favor of the defendant, Matrix Capital Bank (hereafter Matrix) having an approximate principal balance of $550,000.00. Following a default by Luciani on the mortgage and the underlying note, Matrix instituted a foreclosure action. While that action was pending, Luciani entered into an agreement to sell the premises and sought a pay-off figure from Matrix through its attorneys, the Hill Wallack law firm (hereafter Hill Wallack).

In response to his inquiry, Luciani received two separate pay-off letters, each with differing figures. When Luciani sought an explanation and an accounting, he was advised that the higher of the two figures represented an update of the amounts due. No accounting was supplied. Matrix now concedes that the pay-off data supplied to Luciani included miscalculations with regard to several items including the unpaid balance, late charges, inspection fees, a so-called BPO fee, and the recoverable balance assess-

---

[1] Aside from their claims of waiver and equitable estoppel, which this court rejected as part of its earlier ruling, defendants have not challenged the propriety of plaintiff's election to raise this issue here instead of in the prior action. This court will thus assume, without deciding, the legitimacy of the process.

ment. Matrix nevertheless contends that those miscalculations were inconsequential since, once the payoff funds are received, its practice is to retain only the amounts called for by its own accounting records. As it turned out, the amount sought and received by Matrix exceeded the actual amount due by $3,108.15. Although Matrix contends that a check in that amount was sent to Luciani, he never received it. Matrix subsequently concluded that an additional $1,200.00 was due to Luciani based on a fee advance returned to Matrix from Hill Wallack. Thus the total refund due to plaintiff, not counting any additional adjustment for attorneys fees is $4,308.15.

As noted, the original pay-off figure included an attorney's fees component. Although relatively little activity had occurred in the foreclosure suit and no judgment had been entered, Hill Wallack computed its fees based on the maximum percentages allowed under *R. 4:42–9*. Given the total principal and interest then due, $583,441 .69, the fee amounted to $5,984.42. Hill Wallack concedes that, if based on the time actually expended, the reasonable value of the time expended would have amounted to only $962.50,[2] about one-sixth the amount actually charged.

## IV. *CONCLUSIONS OF LAW*

Given the previous rulings of this court, the only issue remaining is the amount of the counsel fees which could have legitimately been charged as part of the previous pay-off in the mortgage foreclosure. Plaintiff claims that counsel should be limited to the reasonable value of the services performed with the formula contained in *R. 4:42–9(a)(4)* to be applied as a cap. Defendant, on the other hand, argues that the full percentages outlined in *R. 4:42–9(a)(4)* are mandatory and that the actual time expended is not controlling. Although no Appellate Court has ruled on this issue, each side cites two trial court rulings in

---

[2] This number does not include the paralegal's time but it is Hill Wallack's practice to not separately bill its clients for that cost.

support of its position.  See *Collective Fed. S. & L. Ass'n v. Toland*, 207 *N.J.Super.* 157, 504 *A.2d* 59 (Ch.Div.1985); *National City Mortg. v. Smith*, 324 *N.J.Super.* 509, 735 *A.2d* 1221 (Ch.Div. 1999).

Both cases underscore the notion that, in a mortgage foreclosure setting, the amount of the attorneys fees that may be included in a judgment, or charged as part of the sum needed to cure a default prior to judgment, is limited by *R. 4:42–9*.  The underlying principle of these, and other cases, is that although contractual provisions relating to an award of counsel fees are generally enforceable, if the fees being sought are part of an award in a mortgage foreclosure action, such provisions must be read within the restrictions imposed by our Court Rules.  *Coastal State Bank v. Colonial Wood Products, Inc.*, 172 *N.J.Super.* 320, 324, 411 *A.2d* 1172 (App.Div.1980). However, such a recognition does not answer the question of whether the court has any discretion in this area.  Nor are the results in the cases cited consistent with respect to how the *quantum* of the award was measured.

In *Collective Fed. S & L Ass'n. v. Toland*, for example, the attorneys fees actually awarded were based on the "time and effort" plaintiff's counsel had spent in the case.  Although the ruling did not speak to the issue of what discretion the court had, it appears clear that Judge Rimm assumed he had that discretion because the sum awarded was below the amount that a literal application of the Rule would have warranted.[3]  207 *N.J.Super.* at 163, 504 *A.2d* 59.  In *National City Mortg.*, on the other hand, Judge Callinan awarded the maximum amount allowable.  *Id.* at 514, 735 *A.2d* 1221.  Although there was, once again, no discussion of what discretion the court believed it had, if any, the stated assumption was that the fees expended in that case actually exceeded the amount allowable under the Rules.  There was thus

---

[3] Since the total due on the mortgage in *Toland* was $33,890.38 the full amount allowable under *R.* 4:42–9(a)(4) would have amounted to $488.90 whereas the actual award was $300.00. *Id.* at 159, Footnote 1, 504 *A.2d* 59.

no occasion to address the issue of what to do when, like here, the amount earned is actually less than the Rule allows.

Despite these rulings, the question remains open as to whether the formula contained in *R. 4:42–9(a)(4)* is to be applied automatically or whether the court may exercise discretion. Given the discretion that courts normally have with regard to the quantum of an attorneys fee award, *Zyck v. Hartford Insurance Group*, 150 *N.J.Super.* 431, 375 *A.*2d 1232, (App.Div.1977), certif. den. 75 *N.J.* 521, 384 *A.*2d 501 (1977), the answer would appear temptingly easy, that is, the court does have discretion. On the other hand, as counsel for Hill Wallack points out, *R. 4:42–9(a)(4)* utilizes the word "shall" when introducing the applicable percentages.[4] He thus argues that the imperative quality of that language makes an strict application of the percentages mandatory. Although that is one way to read the Rule, I find Hill Wallack's argument to be unpersuasive.

■ To begin with, even if the use of the word "shall" was intended to make the application of the full percentages contained in *R. 4:42–9(4)* mandatory, this Rule, like all of our Court Rules, can be relaxed in the interest of justice. *See R. 1:1–2*; *Satellite Gateway Com. v. Musi Dining Car Co.*, 110 *N.J.* 280, 288, 540 *A.*2d 1267 (1988). Although recourse to the relaxation provision of the Rules should be sparing, *Oliviero v. Porter Hayden Co.*, 241 *N.J.Super.* 381, 387, 575 *A.*2d 50 (App.Div.1990), I have no hesitation in invoking that option here. In a setting like this, it would clearly be inequitable to sanction a fee which is six times greater than the reasonable value of the time expended. This is particularly true when one recognizes that homeowners seeking to cure the negative consequences of a foreclosure, either by selling the encumbered property or refinancing the mortgage, have little or no bargaining strength.

---

[4] The relevant language of *R.* 4:42–9(a)(4) is that, in an action for the foreclosure of a mortgage, "the allowance shall be calculated as follows . . ." (following which the percentages are outlined.)

Relaxation aside, I am not persuaded that an automatic application of the full percentages contained in R. 4:42–9(4) represents an appropriate reading of that Rule in any event. Defendants interpretation of the word "shall" as implying an imperative is not unreasonable but a fairer reading of the language suggests that the mandatory nature of the Rule relates to its upper limits. Stated differently, given the widespread and longstanding acceptance of the discretion that courts generally have regarding the quantum of an attorneys fee award, *Zyck v. Hartford Ins. Group, supra,* the more likely intent of *R. 4:42–9(a)(4)* is that its percentages are intended to act as a *cap* on an award, not a mandate to charge the maximum, regardless of what is reasonable.[5]

In assessing the charges here, one must also consider the impact, if any, of the Fair Foreclosure Act. *N.J.S.A. 2A:50–53 to 50–68.* As that statute makes clear, it is the public policy of this State that homeowners be given "every opportunity" to pay their home mortgages and thus keep their homes. *N.J.S.A. 2A:50–54.* To further that policy the legislature has created an elaborate scheme of procedural protections for homeowners, including a liberalization of the circumstances in which such a person can cure a default. *N.J.S.A. 2A:50–57.* Among those protections is a prohibition on lenders imposing on a debtor any charge, fee or penalty as a condition to curing a default. *N.J.S.A. 2A:50–57(c).*

Although that prohibition does not preclude the inclusion of counsel fees as a component of the amount needed to cure a default, such fees "shall not exceed the amount permitted under the Rules Governing the Courts of the State of New Jersey." *N.J.S.A. 2A:50–57(b)(3).*[6] Since the Act only precludes the impo-

---

[5] Neither side argues that a court may *exceed* the limitations of the rule and thus they have assumed, as does this court, that the Rule acts as cap. Thus, to whatever extent discretion may be exercised, it would have to be within the upper limits of the rule itself.

[6] Although the fees charged here were part of a total payoff of the mortgage, not simply a payment of the arrearage, it is my view that both steps represent a cure of the default and thus *N.J.S.A.* 2A:50–57(b)(3) would apply in either setting.

sition of counsel fees which *exceed* the amount allowed by our Rules, the implication is that such a charge (or award) may also be *less* than the Rules allow.

■ Although one may argue that the Act adds nothing that *R. 4:42–9(a)(4)* does not already mandate, at the least, the Act underscores the notion that the maximum allowable is not mandatory. More importantly, where a lender imposes a legal fee which is six times higher than the reasonable value of the time expended as a condition of a pay off, it seems clear that such a charge would constitute a penalty and thus violate *N.J.S.A. 2A:50–57(c)*. The imposition of such a charge would also undermine the public policy of the Act that homeowners be given "every opportunity" to pay their mortgages. Indeed, it would run counter to the liberal attitude toward redemption, in general. See *Coastal State Bank v. Colonial Wood Products, Inc.*, supra at 324, 411 *A.2d* 1172.

## CONCLUSION

Given the undisputed facts here, the reasonable value of the services rendered by Hill Wallack in connection with the earlier mortgage foreclosure action is $962.50. The prior charge of $5,984.42 was therefore improper and restitution of the difference will be ordered. Even though the initial charge did not exceed the maximum fee allowed by the Rule, given the discretion that this court has to limit the fee, I do not find the prior charge to have been reasonable under the circumstances. Although this exercise of discretion is consistent with a reasonable reading of *R. 4:42–9(4)*, even if the Rule were not to be so read, this court would exercise its discretion to relax the Rule in accordance with *R. 1:1–2*. This result is also supported by the Fair Foreclosure Act.

As previously indicated, plaintiff is also entitled to a refund for the overcharge relating to the non-legal portion of the pay-out and restitution will be ordered to that extent. Court costs and prejudgment interest will also be awarded.