788 A.2d 941 (2001)
347 N.J. Super. 127
STEWART TITLE GUARANTY COMPANY; and Twenty First Century Title Incorporated, Plaintiffs,
v.
Vivian D. LEWIS; State of New Jersey; United Jersey Bank; Summit Bank; and Louise Stanford, Defendants.
Superior Court of New Jersey, Chancery Division, Monmouth County.
Decided July 20, 2001.
Deirdre Gallagher, Parsippany, for plaintiffs (Greiner, Gallagher & Cavanaugh, L.L.C., attorneys).
Joseph M. Casello, for defendant Vivian D. Lewis (Broege, Neumann, Fischer & Shaver, L.L.C., Manasquan, attorneys).
FISHER, P.J.Ch.

I
R.4:42-9(a)(4) permits counsel fee awards in mortgage foreclosure actions based upon a specific formula unrelated to the actual legal services rendered. One trial court recently claimed the discretion to downwardly adjust a fee award[1] but now this court is asked to upwardly adjust a fee for equitable reasons. Because of the rule's unmistakable rigidity, the court concludes that no such discretion exists and declines plaintiffs' invitation to apply the rule expansively.

II
The attempts of defendant Vivian Lewis ("Vivian") and other members of her family to retain possession of the property in question have propelled the events which, once again, bring this matter before the court.
After extensive proceedings, the quest of plaintiffs Stewart Title and Twenty-First *942 Century Title, Incorporated ("plaintiffs") for foreclosure was delayed when Vivian invoked the protection of the bankruptcy laws. Plaintiffs moved for, and the bankruptcy court granted, relief from the automatic stay provisions of the bankruptcy code, thus allowing this court to hear plaintiff's application for additional fees and expenses not included in the final judgment entered on May 12, 2000.
Plaintiffs contend that the shell game played by Vivian and other members of her family have forced them to incur sizable legal fees. They claim that the percentages set forth in R.4:42-9(a)(4)which would allow for only the $1,433.25 in fees already included in the final judgmentdo not remotely compensate for the approximate $23,000 representing their counsel's actual services. Plaintiffs believe the court possesses the discretion to grant additional relief beyond the express terms of the rule. Conversely, Vivian rests upon a literal application of the rule, contending that no discretion to expand the scope of the formula exists. In examining these contentions, the court turns first to a review of the events leading up to the present posture of the case and then to a consideration of R.4:42-9(a)(4) and its history.

III
Defendant Louise Stanford ("Mrs. Stanford") lived at the property in question with her husband for many years.[2] Mr. Stanford died in 1983, leaving Mrs. Stanford unable to pay the real estate taxes and other expenses. To enable her to remain in the family home, Mrs. Stanford's children orchestrated a strategy whereby the property was first transferred to her son, Carl Stanford ("Carl"). Carl then obtained a mortgage loan from Harmonia Savings Bank and granted his mother a life estate. However, Carl soon failed to pay the real estate taxes and mortgage installments, causing Harmonia to commence a foreclosure action.
To remedy that situation, Vivian purchased the property from her brother Carl and applied for a mortgage loan through Countrywide Home Loans ("Countrywide"), plaintiffs' predecessor in title. Vivian certified at the closing of the loan that she paid Carl $40,574.20 for the property when, in fact, she only paid Carl $8500. More importantly, Vivian's affidavit of title failed to mention Mrs. Stanford's alleged life estate. Unaware, Countrywide lent Vivian the funds. In 1996 Vivian defaulted on her obligations and Countrywide commenced this foreclosure action. Mrs. Stanford was later added as a party upon discovery of the alleged life estate.
A trial was conducted on June 7, 1999 to determine whether Mrs. Stanford's life estate took priority over Countrywide's mortgage. Applying equitable principles, this court concluded that it "should order done what ought to have been done,"meaning that the intention of the parties to the Countrywide loan transaction should govern notwithstanding what the loan documents revealed. The circumstances and equitable concepts discussed in this court's earlier opinion demanded that Countrywide's mortgage take priority over any other interests or claims, and certainly the undisclosed life estate of Mrs. Stanford:
There is no questionindeed, it is stipulatedthat all the prior machinations regarding this property after the death of [Mr. Stanford] were made for the benefit of [Mrs. Stanford] and to keep *943 her in the property. Clinging to Countrywide's failure to more carefully tend to its paperwork, defendant claims this mistake must be perpetuated because the mistake was made by "professionals" who should "take responsibility for their actions." She follows through on that theme in her closing assertion:
Plaintiff argues that the 81 year old Louise Stamford [sic] should be punished because the house which her daughter, Ms. Lewis, lives in was repaired. At no time did any of the so called "professionals" bring any title problems to the attention of anyone. Did anyone state that Louise Stamford [sic] could not have a life estate in the property being purchased by Ms. Lewis? No, in fact, the hired "professionals" saw to it that the life estate was included. No question was raised until monetary payments were stopped. It is at this point that the professionals ran for cover claiming the defendants did something wrong. If the defendants did anything wrong, it was in allowing these so called professionals to help them.
Of course, what defendant conveniently forgets is that but for the loan from Countrywide the property would have been lost through the foreclosure proceeding brought by the earlier mortgage holder. She also overlooks the fact that the $102,000 loan made by Countrywide not only retired the earlier mortgage but also provided funds needed for renovations on the home. What has she done for Countrywide in return? Have all the payments due on the note been made? Not a dime since May 1, 1996, over three years now. What is her answer to the injury being done to Countrywide other than her contention that Countrywide should not be permitted to avoid the obvious blunder concerning the life estate? (citations and a footnote omitted)
Stewart Title Guaranty Co., et al. v. Lewis, et al. Dkt No. F-16216-96 (Sup.Ct. Ch.Div., June 28, 1999 at 6-8).
Considering the absence of any evidence "other than the convenient beliefs now expressed by [Mrs. Stanford] and Vivian Lewis," id., at 9, the court concluded that Countrywide's mortgage took precedence over Mrs. Stanford's life estate:
Nothing could be more inequitable than an insistence upon the result demanded by defendant. Defendant, as discussed above, essentially argues that Countrywide made a mistake which it should be forced to live with. But, as Judge Jayne said ... "equitable relief is embedded in the requirement of conscience and good faith in one's relations with another, measured by the characteristics of the relationship and by the common standard of right and justice." Day v. Grossman, 44 N.J.Super. 28, 36, 129 A.2d 577 (App.Div.1957). Would defendant take the same approach if an extra zero was mistakenly added to the principal amount due on the mortgage and, when seeking to pay off a $100,000 mortgage, the bank said she owed $1,000,000? Hardly. Why, then, should this court simply tell Countrywide that it is a terrible shame they made a mistake when relying upon Vivian Lewis' affidavit of title (which failed to disclose the existence of a life estate in favor of defendant); that it is unfortunate but they will simply have to wait to pursue any of its remedies until the termination of the life estate? The proper approach was never better described than by Judge Cardozo who said, "[l]et the hardship be strong enough, and equity will find a way though many a formula of inaction may seem to bar the path." Graf v. Hope Bldg. Corp., 254 N.Y. 1, 12, *944 171 N.E. 884, 888 (1930) (dissenting opinion). Defendant's transparent contentions are no obstacle to ... ordering done what ought to be done. Supra, at 9.
As a result of these findings and conclusions, an order was entered in favor of plaintiffs as to the contested issues and the action remanded to the Foreclosure Unit.
Mrs. Stanford filed an appeal which was dismissed as moot when she died soon after.[3] Vivian's later motion to vacate the judgment was denied. As mentioned in Section II above, Vivian filed a bankruptcy petition. When plaintiffs successfully moved for a lifting of the automatic stay, the matter returned to this court for a consideration of this motion to amend the judgment.

IV
R.4:42-9[4] is based upon a view of counsel fee awards known as the "American rule." North Bergen Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 569, 730 A.2d 843 (1999). The "American rule" simply entails that "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." Rendine v. Pantzer, 141 N.J. 292, 322, 661 A.2d 1202 (1995), quoting Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). In conformity with that philosophy, the wording of R.4:42-9 commences with the directive that "[n]o fee for legal services shall be allowed ... except" as contained therein. A number of types of civil actions are set forth, including mortgage foreclosure actions.
Presently, the quantum of fee awards in foreclosure actions is carefully limited through the application of certain percentages. Why the rule ended up being crafted this way is not entirely clear. Long before the first appearance of a court-generated rule, the power to make (and limit) such awards was recognized as being within the inherent power of the chancery court. See, Bank of Commerce v. Markakos, 22 N.J. 428, 431, 126 A.2d 346 (1956); United Security Life Ins. & Trust Co. v. Smith, 51 N.J.Eq. 635, 30 A. 429 (E. & A. 1893).[5] The first such court rule, adopted in 1902, was based upon a formula similar to the present-day rule. See, Shreve v. Harvey, 74 N.J.Eq. 336, 351, 70 A. 671 (Ch.1908).[6] Subsequent incarnations reveal *945 little change up until the present other than modest increases in the percentages.[7]
In probing this percentage-based rule for some element of discretion, it is first observed that the rule's language appears to make mandatory the manner of calculation of an award: "In an action for the foreclosure of a mortgage, the allowance shall be calculated as follows" (emphasis added). Indeed, that there is an entitlement to a fee is demonstrated by the phrase: "in any action a minimum fee of $75 shall be allowed"[8] (emphasis added). Since the use of the word "shall" normally intones an imperative application, it would be anticipated that applications for fees would mechanically follow the rule's formula. If that is so, the relief which plaintiffs seek would be limited to $1433.25 (as already reflected by the final judgment entered on May 12, 2000). However, the manner in which courts interpret the word "shall" does not always lead to such a result.
At times our courts have determined that the Legislature's use of the word "shall" does not always carry an imperative, but sometimes a directory, connotation. By the same token, it has been held that the word "may" is normally understood to carry a directive or permissive connotation. Indeed, our courts have concluded that "may" and "shall" sometimes "have been held to be interchangeable when necessary to implement legislative intent." State v. Jorn, 340 N.J.Super. 192, 196, 774 A.2d 507 (App.Div.2001); No Illegal Points, Citizens For Drivers' Rights, Inc. v. Florio, 264 N.J.Super. 318, 329, 624 A.2d 981 (App.Div.1993), certif. denied 134 N.J. 479, 634 A.2d 526 (1993). The difference, however, between the unconstrained manner in which "shall" has been viewed in the aforementioned authorities and the way the rule should be viewed here lies with its source.
Here, the court is asked to construe a rule enacted by our Supreme Court. The rule has passed through the Supreme Court's Civil Practice Committee, a group consisting of numerous sitting appellate and trial judges and seasoned lawyers; thereafter the Court itself considered the Committee's recommendations. It is difficult to imagine that after such a review by so many judges and lawyers the word "shall" in the rule was really intended to mean or to be interchangeable with the word "may." As a result, it would appear beyond question that the language of the rule militates against the existence of any discretion to depart from its strict application. That this is so is demonstrated, for the most part, by the experiences of our courts.

*946 V
Whether R.4:42-9(a)(4)'s limits should be viewed as being imperative or merely discretionary has been examined on a few occasions. In the late 1980s, the last sentence of the rule said: "in no case shall the allowance exceed $7,500, except upon application supported by affidavit of services." One trial court concluded this meant the rule did not allow for an award in excess of that permitted by the formula unless the result exceeded $7500, Levine v. Levine, 210 N.J.Super. 585, 588, 510 A.2d 286 (Ch./Law Div.1986) (emphasis in the original):
It is clear there is no room for discretion in the formula. Nor is there discretion allowed in setting a maximum of $7,500, the language of the Rule being the mandatory "shall." The only point at which the court is given discretion is when the amount reached pursuant to the formula exceeds the cap. Thereafter, the court may entertain an application for those additional fees between the cap and the amount arrived at by formula. The exception which gives the court discretion is an exception to the provisio, not an exception to the rule.
A few years later, however, another trial court disagreed. In The Farmers & Merchants National Bank of Bridgeton v. Cotler, 225 N.J.Super. 160, 162, 541 A.2d 1123 (Ch.Div.1988) the court criticized the limits of the rule expressed in Levine:
[If Levine were followed] this restriction would prevail regardless of the complexity of the foreclosure or the amount of work involved in bringing the litigation to a successful conclusion. The court would be stripped of any discretion until the amount due plaintiff, calculated according to the rule, exceeded $7,500.
The court cannot conclude that the rule was intended to work such a result.
This difference of opinion was soon laid to rest. In 1990, the Civil Practice Committee examined these conflicting decisions and, as simply stated in the annotations to our Court Rules, "recommended adoption of the Levine holding and [the] Supreme Court concurred." Pressler, Current N.J. Court Rules (Gann 2001 edition), comment to R.4:42-9 at p. 1476. The rule was reworded to its present form[9] so as to make the adoption of Judge Krafte's ruling in Levine expressive of the rule's true purpose. That intent clearly allows for the exercise of discretion only when the fee derived from an application of the formula exceeds $7500.

VI
If the 1990 revision to the rule was the last word on the subject, plaintiffs' motion would not long detain the court. That amendment constituted the rejection of Cotler's assertion that the rule-maker had "built in an escape hatch designed to allow for those cases in which boilerplate paperwork and paralegal processing were not adequate to foreclose the mortgage." 225 N.J.Super. at 163, 541 A.2d 1123. In short, this "escape hatch" was certainly nailed shut by the 1990 amendment.
Plaintiffs contend, however, the escape hatch was pried opened by a recent trial court decision. In Luciani v. Hill Wallack, 329 N.J.Super. 170, 746 A.2d 1097 (Ch.Div.1999), the court considered whether the discretion exists to downwardly adjust a fee notwithstanding the result obtained from an application of the rule's formula. There, the principal amount due on the mortgage was $583,441.69 and the fee derived from the formula was found to be $5,984.42. Id. at 173, 746 A.2d 1097. Counsel for the mortgagee acknowledged *947 that due to the small amount of work involved "the reasonable value of the time expended would have amounted to only $962.50, about one-sixth the amount actually charged." Id. at 173, 746 A.2d 1097 (footnote omitted).
Judge Gibson's opinion in Luciani recognized that prior decisions tangentially related to the subjectnamely Collective Fed. S. & L. Ass'n v. Toland, 207 N.J.Super. 157, 504 A.2d 59 (Ch.Div.1985) [10] and National City Mortg. v. Smith, 324 N.J.Super. 509, 735 A.2d 1221 (Ch.Div. 1999)[11]did not focus on the existence of discretion to award a lesser fee than that derived from the formula.[12] But considering the discretion that courts "normally have with regard to the quantum of an attorneys['] fee award," and believing R.1:1-2 provides the power to relax even a rule stated in mandatory terms such as R.4:42-9(a)(4), Luciani concluded that the discretion exists to reduce the fee generated by application of the formula:
In a setting like this, it would clearly be inequitable to sanction a fee which is six times greater than the reasonable value of the time expended. This is particularly true when one recognizes that homeowners seeking to cure the negative consequences of a foreclosure, either by selling the encumbered property or refinancing the mortgage, have little or no bargaining strength.
329 N.J.Super. at 175, 746 A.2d 1097.
The validity of Luciani's holding is certainly questionable as are the strength of its underpinnings. While having a laudable purpose, R.1:1-2 provides a very limited basis for relaxation.[13] As observed in Oliviero v. Porter Hayden Co., 241 N.J.Super. 381, 387, 575 A.2d 50 (App.Div. 1990), R.1:1-2 "should be used sparingly," particularly in an area where the rule-makers have already spoken. A frequent or freewheeling use of R.1:1-2 would lead to a sublimation of all other rules, allowing decisions to be rendered on nothing more than a gestalt-like methodology. Plaintiffs' plea for the relaxation of the rule to allow for a fee in excess of the formula's solution would simply obliterate the rule's framework and cause a return to the bankrupt Cotler approach specifically rejected by the Supreme Court.
In uncovering a small font of discretion to reduce an excessive fee, Judge Gibson acknowledged the limitations of his holding. While finding the contention that the word "shall" implies an imperative "is not unreasonable," Luciani nevertheless viewed its imperative application as relating only to the cap or limit on any award: "the more likely intent of R.4:42-9(a)(4) is that its percentages are intended to act as a cap on an award, not a mandate to charge the maximum, regardless of what is reasonable." 329 N.J.Super. at 176, 746 *948 A.2d 1097. Accordingly, while the existence of any discretion in such matters may be debatable,[14] it exists only, as suggested by Luciani, to reduce a fee when the formula provides a result in excess of what the actual charges represent. Luciani's approach is simply inapplicable to the present case. To the extent that Luciani's view may be a valid expression of the intent of the rule, this court is satisfied that an extension of that interpretation to the present situation is inappropriate and would resurrect the same theory once espoused by Cotler and expressly rejected by the Supreme Court's adoption of the 1990 amendment to the rule.
In summary, this court is quite convinced that plaintiffs have been greatly wronged by the machinations of defendant and her other family members in the charade described earlier and an award of the fees sought[15] would constitute a most equitable and desirable result. But the court is also abundantly satisfied that R.4:42-9(a)(4) prohibits such a result. Since equity follows the law, see, e.g., Monmouth Lumber Co. v. Indemnity Insurance Co. of No. America, 21 N.J. 439, 122 A.2d 604 (1956), plaintiffs' motion for a fee enhanced beyond the specific parameters of R.4:42-9(a)(4) will be denied.

VII
Plaintiffs also seek an amendment to the judgment which would include an award of $8,849.33 to compensate for outstanding real estate taxes they have paid on this property. This fact was stipulated at trial but was inadvertently omitted by plaintiffs when they applied for final judgment. In opposition, Vivian suggests nothing other than the contention that this error should have been recognized at an earlier date. Perhaps that is true, but to rebuff plaintiffs' request is to ignore the reality that plaintiffs (or their predecessor) paid these funds on behalf of the property and should be compensated if Vivian is able to redeem the property. Fundamental fairness requires the inclusion of this amount, otherwise Vivian would obtain a windfall to which she is truly not entitled. The motion to amend the judgment will be granted.

VIII
For the foregoing reasons, the motion for fees in excess of the amount which is derived from a strict application of R.4:42-9(a)(4) will be denied and the motion to amend the judgment to include the omitted amount of $8,849.33 for real estate taxes paid by plaintiffs will be granted. Plaintiffs' counsel is directed to submit a proposed order pursuant to the five-day rule.
NOTES
[1] Luciani v. Hill Wallack, 329 N.J.Super. 170, 746 A.2d 1097 (Ch.Div.1999).
[2] The facts set forth in this and the following paragraph were stipulated by the parties prior to the 1999 trial.
[3] Her death obviously brought an end to the alleged life estate.
[4] The entirety of R.4:42-9(a)(4) states: "No fee for legal services shall be allowed in the taxed costs or otherwise, except ... (4) In an action for the foreclosure of a mortgage, the allowance shall be calculated as follows: on all sums adjudged to be paid the plaintiff amounting to $5,000 or less, at the rate of 3.5%, provided, however, that in any action a minimum fee of $75 shall be allowed; upon the excess of $5,000 and up to $10,000 at the rate of 1/5%; and upon the excess over $10,000 at the rate of 1%, provided that the allowance shall not exceed $7,500. If, however, application of the formula prescribed by this rule results in a sum in excess of $7,500, the court may award an additional fee not greater than the amount of such excess on application supported by affidavit of services. In no case shall the fee allowance exceed the limitations of this rule."
[5] Chief Justice Vanderbilt stated in Markakos that "[t]he Court of Chancery, like all other courts, has always had the inherent power to control the allowance of counsel fees, and no court has been more vigorous in asserting such power than the Court of Chancery." 22 N.J. at 431, 126 A.2d 346. See also, the lower court decision in Markakos written by then Judge (later Justice) Sullivan. 40 N.J.Super. 31, 33, 122 A.2d 13 (Ch.Div.1956).
[6] "By the ninety-first section of the Chancery act (P.L.1902 pp. 510, 540), it is provided that the counsel fee in foreclosure suits to be included in the complainants' taxed costs shall be such percentage, not exceeding five per cent. of the amount decreed, as the chancellor may by general rule, from time to time, prescribe."
[7] For example, the version of the rule considered in Markakos, supra, 22 N.J. at 429-430, 126 A.2d 346, set the rates as follows: "on all sums adjudged to be paid the plaintiff in such an action, amounting to $5,000 or less, at the rate of 2%; upon the excess over $5,000 and up to $10,000 at the rate of 1%; and upon the excess over $10,000 at the rate of one-half of 1%."
[8] The right to a fee in such actions emanates from the fact that mortgage loans, as a matter of course, place specific contractual obligations on the mortgagor to bear the fees incurred by the mortgagee upon the need to foreclose or collect. The American rule has not been hostile to the recovery of counsel fees when authorized by contract, see, e.g., Satellite Gateway Com. v. Musi Dining Car Co., 110 N.J. 280, 286, 540 A.2d 1267 (1988), although that right is tempered by the power of a court to construe such an agreement strictly in light of the public policy disfavoring such awards, see, e.g., McGuire v. City of Jersey City, 125 N.J. 310, 326-327, 593 A.2d 309 (1991).
[9] See, n. 4, supra.
[10] The trial court in Collective held that an award of fees is appropriate pursuant to R.4:42-9(a)(4) even if the obligation is paid prior to the entry of judgment. 207 N.J.Super. at 162, 504 A.2d 59.
[11] The court in National City found that the appropriate fee should be computed by applying the rule's formula to the outstanding principal balance rather than the actual amount necessary to cure the default.
[12] The court in Luciani made no mention of, and apparently did not consider, the conflict between Levine and Cotler or that conflict's resolution by the 1990 amendment which sheds considerable light on the rule's meaning.
[13] R. 1:1-2 states: "The rules in Part I through Part VIII, inclusive, shall be construed to secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay. Unless otherwise stated, any rule may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice. In the absence of rule, the court may proceed in any manner compatible with these purposes."
[14] It could be that the percentage-based rule, long in place in this State, see, n. 6, supra, is intended to limit the quantum of fees and avoid the further burden of such an award on a mortgagor and increase the likelihood of redemption. If that is the rule's primary intent Luciani's view would be justified. On the other hand, the Court may have imposed a mechanical formula so as to avoid the burden on trial courts in weighing and assessing the many fee applications that an otherwise unrestricted rule would generate. Luciani would be contrary to the rule if that were its true intent. The original purpose behind the percentage-based approach set forth in the first chancery rule on the subject, upon which the later amendments and the current rule is based, however, is not apparent.
[15] Plaintiffs seek an award, based upon their counsel's certification of services, in the amount of $23,646.01. If the court were not bound by the strictures of the rule, this amount would be found to be fair and reasonable and its imposition certainly warranted by the circumstances.