735 A.2d 1221 (1999)
324 N.J. Super. 509
NATIONAL CITY MORTGAGE, Plaintiff,
v.
Patrick K. SMITH; Mrs. Patrick K. Smith, wife of Patrick K. Smith; Mary E. Smith; Mr. Smith, husband of Mary E. Smith, Defendants.
Superior Court of New Jersey, Chancery Division, Atlantic County.
Decided March 26, 1999.
*1222 Dakar R. Ross, Princeton, for plaintiffs (Hill Wallack attorneys).
Jay L. Hundertmark for defendants.
CALLINAN, J.S.C.
This matter comes before this Court by way of motion to fix the amounts allowable for counsel fees and title search fees arising from the plaintiff's foreclosure of a residential mortgage.
The facts in this matter are straightforward and not in dispute. On January 24, 1994, Patrick K. Smith and Mary E. Smith executed a Note in the amount $90,000 in favor of American Suburban Funding Corporation. On the same date the Smiths executed a Mortgage on the premises known as 804 N. Burghley Avenue, Ventnor, New Jersey, securing the Note. American Suburban Funding Corporation assigned the Note and Mortgage to Integra Mortgage Company which in turn assigned its interest to National City Mortgage, the plaintiff herein. By virtue of a divorce decree, Patrick K. Smith is now the sole owner of the premises and solely responsible for all costs associated with the subject property. Smith defaulted on his obligation to maintain the regular monthly payments required by the Note and Mortgage and pursuant to an acceleration clause contained in the Mortgage, National City Mortgage accelerated the balance due on the loan. Smith has offered to redeem the property but has not yet done so because of differing opinions on the monetary amounts necessary to cure the default. As a result, National City Mortgage filed a complaint in foreclosure on October 8, 1998. Smith filed a contesting answer dated December 16, 1998. Smith seeks to cure the default by tendering the arrearage plus sums incurred as a result of the default. The parties agree on all amounts except the counsel fees and title search fees. The parties request that this Court fix the amount of fees allowable to plaintiff for counsel fees and title search fees.
The narrow issue for the Court is whether, in the case where a defaulting mortgagor cures default prior to final judgment, the allowable statutory counsel and title search fees fixed by statute are computed by multiplying the prescribed percentage found in R. 4:42-9 by the actual amount necessary to cure the debtor's default or the amount of the fully accelerated, outstanding principal balance of the underlying debt.
Pursuant to the Fair Foreclosure Act, N.J.S.A. 2A:50-53 to 68, a debtor in default of a residential mortgage obligation *1223 has the right at any time, up to the entry of final judgment to cure the default, de-accelerate and reinstate the residential mortgage by tendering all sums which would have been due in the absence of default. The cure of a default places the debtor in the same position as if the default had not occurred and, as of the date of cure, nullifies any acceleration of any obligation under the mortgage, note or bond arising from the default. N.J.S.A. 2A:50-57(a).
It is also incumbent upon a debtor declared in default of a residential mortgage obligation to pay "attorney's fees in an amount which shall not exceed the amount permitted under the Rules Governing the Courts of the State of New Jersey ...." N.J.S.A. 2A:50-57(b)(3).
The direct reference to the "Rules Governing the Courts of the State of New Jersey" refers the reader to R. 4:42-9 which governs counsel fees. Contrary to the general rule in American jurisprudence disallowing the award of attorney fees to successful parties, R. 4:42-9 provides for the allowance of counsel fees in an action for the foreclosure of a mortgage. More specifically:
No fee for legal services shall be allowed in the taxed costs or otherwise, except:
(4) In an action for the foreclosure of a mortgage, the allowance shall be calculated as follows: on all sums adjudged to be paid the plaintiff amounting to $5,000 or less, at the rate of 3½%, provided, however, that in any action a minimum fee of $75 shall be allowed; upon the excess over $5,000 and up to $10,000 at the rate of 1½%; and upon the excess over $10,000 at the rate of 1%, provided that the allowance shall not exceed $7,500. If, however, application of the formula prescribed by this rule results in a sum in excess of $7,500, the court may award an additional fee not greater than the amount of such excess on application supported by affidavit of services. In no case shall the fee allowance exceed the limitations of this rule.
The Defendant maintains that in order to cure the default, he must pay plaintiff all sums which would have been due in the absence of a default. Citing N.J.S.A. 2A:50-57, defendant argues that the curative sum is the actual arrearage which, calculated through the end of January 1999, totaled $9,176.68. The amount of the counsel fees based on the arrearage would be $237.65. Since no judgment has been entered against the defendant, it is defendant's view that the arrearage is the only amount upon which allowable counsel fees can be based.
Plaintiff asserts that the allowable counsel fees should be calculated by multiplying the statutorily prescribed percentage by the amount of the outstanding principal balance of the mortgage debt. The outstanding principal balance of the mortgage debt is $73,310.58. This sum multiplied by the percentages found in R. 4:42-9 would yield counsel fees of $883.11. In support of this view, the plaintiff cites Collective Federal Sav. & Loan Ass'n v. Toland, 207 N.J.Super. 157, 504 A.2d 59 (Ch.Div.1985) wherein, it was stated that:
The purpose of [Rule 4:42-9] is to allow a prevailing plaintiff in a foreclosure action to obtain counsel fees, contrary to the general American rule, and to limit the amount of such counsel fees. The rule makes eminent good sense in the market place. It encourages the making of mortgage loans and permits New Jersey borrowers to compete more effectively for mortgage funds, even from out-of-state lenders, because lenders know they will recover all or a part of their attorney's fees if forced to foreclose a mortgage. * * * The allowance [of fees] is an attempt to make the mortgagee whole in the same manner and for the same reasons that the rule provides for fees upon the entry of judgment. In any event, given the existence of the rule, and the distinct possibility that every foreclosure action, once commenced, may result in the entry of a judgment, a defaulting mortgagor always faces the *1224 possibility of paying attorney's fees in accordance with the rule.
Collective Federal, at 161-162, 504 A.2d 59.
Collective Federal, decided prior to the passage of the Fair Foreclosure Act, involved a debtor who tendered the full amount of principal and interest prior to judgment. The debtor in the matter at bar merely seeks to cure default, not to tender the full amount of the mortgage debt.
The answer to the issue here presented lies in statutory construction and interpretation. The function of the court in construing any statute is to give effect to the legislative intention and purpose. State v. Valentin, 208 N.J.Super. 536, 539, 506 A.2d 748 (App.Div.1986). In examining legislative intent, the court must first direct its inquiry to the actual language of the statute. Schiavo v. John F. Kennedy Hosp., 258 N.J.Super. 380, 609 A.2d 781 (App.Div.1992) aff'd., 131 N.J. 400, 620 A.2d 1050 (1993). It is to be presumed that the legislative intent is expressed by the ordinary meaning of the words used, and if the statutory language is clear, it is not necessary to examine legislative history. State v. Mortimer, 135 N.J. 517, 532, 641 A.2d 257 (1994), cert. denied 513 U.S . 970, 115 S.Ct. 440, 130 L.Ed.2d 351 (1994). The court must therefore seek to ascertain the intention of the Legislature from the plain meaning of the statute and determine what sensible legislators would intend a court to do. State v. Zahl, 259 N.J.Super. 372, 375, 613 A.2d 508 (Law Div.1992). Where a situation is presented which appears to have escaped the attention of the draftsman of a statute the judicial task becomes one of resolving, within the framework of the appropriate canons of construction, the probable legislative intention, bearing in mind the admonition of Chief Justice Weintraub that:
It is frequently difficult for a draftsman of legislation to anticipate all situations and to measure his words against them. Hence cases inevitably arise in which a literal application of the language used would lead to results incompatible with the legislative design. It is the proper function, indeed the obligation, of the judiciary to give effect to the obvious purpose of the Legislature, and to that end `words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms.'
[New Capitol Bar & Grill Corp. v. Div. of Employment Sec., 25 N.J. 155, 160, [135 A.2d 465] (1957) (citing Alexander v. New Jersey Power & Light Co., 21 N.J. 373[, 122 A.2d 339] (1956)).]
The language of N.J.S.A. 2A:50-57(b)(3) is clear and requires no further comment. The pertinent language found in R. 4:42-9(a)(4) allows counsel fees "on all sums adjudged to be paid the plaintiff". Black's Law Dictionary defines "adjudge" as, "[t]o pass on judicially, to decide, settle, or decree,.... Judgment of a court of competent jurisdiction." Black's Law Dictionary 26 (Abridged 6th ed.1991). Inclusion of the word "adjudged" cannot be ignored as mere surplusage. It is to be presumed that the legislative intent is expressed by the ordinary meaning of the words used. At present, the outstanding principal balance of the mortgage obligation has been accelerated as permitted by contract. Defendant maintains that the plaintiff is not entitled to a judgment on the outstanding principal balance as the debtor wishes to cure his default and argues that such cases are and should be speedily resolved in keeping with the spirit and intent of the Fair Foreclosure Act.
Defendant rightly observes that in cases where a debtor wishes to cure a default, the plaintiff's attorney's role is not a complex one. In this case the debtor made his intention to cure known on November 10, 1998, via a letter from his attorney. The actual arrearage figures were not transmitted by plaintiff to defendant until December 23, 1998. This delay prolonged the matter. Defendant argues that basing *1225 counsel fees on the arrearage when there is an anticipated cure within the parameters of the Fair Foreclosure Act might arguably move these matters more swiftly. The knowledge that counsel fees will be significantly reduced in situations where an intent to cure is demonstrated, should cause plaintiffs to present a statement of arrearage promptly and take the case off the court's calendara not unsatisfactory consequence.
The reality, however, is that when institutional lenders begin the foreclosure process there is substantial expense involved. Counsel fees and title search fees mount up quickly. Even when the counsel fees are based on the accelerated amount there are few who would argue that those amounts fully compensate the mortgagee when a cure occurs. To base the fees only upon the defaulted payments would mean that the mortgagee would realize only a pittance for their efforts to collect upon a mortgagor's default. It must be remembered that it is the default of the mortgagor that causes these expenditures. Such a result could not have been the intention of the drafters of the rule.
The Supreme Court has made clear, that the denotation of particular words should not be given undue effect through `scholastic strictness of definition or concept.' As the court further said in Alexander v. New Jersey Power & Light Co., 21 N.J. 373, 378, 122 A.2d 339 (1956):
It is not the meaning of isolated words, but the internal sense of the law, the spirit of the correlated symbols of expression, that we seek in the exposition of a statute. The intention emerges from the principle and policy of the act rather than the literal sense of particular terms, standing alone. But the denotation of particular words must nevertheless control where that result is directed: `The function of the court is `to construe the statute as written * * *. We must regard the statutes as meaning what they say and avoid giving them any construction which would distort their meaning. We have no legislative authority and should not construe statutes any more broadly nor give them any greater effect than their language requires." Belfer v. Borrella, 9 N.J.Super. 287, 293[, 76 A.2d 25] (App. Div.1950).
There is ample authority for the proposition that statutory interpretive technique permits the deletion and disregard of legislative language when the rejection thereof is essential to reach and carry out the purpose of the Legislature.
More to the point, the reliance of defendant's argument on the use in the rule of the word "adjudged" is misplaced. Defendant's position assumes that the judgment referred to by R. 4:42-9 is an adjudication of foreclosure. After a mortgagee institutes a court action a judgment is generally entered by a court in disposing of the matter. In this case there will be a judgment of dismissal predicated upon the debtor's cure of the default. This judgment declares that the cure has been accomplished and inferentially that the curative amount was no longer in dispute. If the amount to cure cannot be agreed upon by the parties, it normally would be adjudicated in this forum.
This court would adjudge the amount due the plaintiff to be the defaulted payments together with counsel fees based on the accelerated amount which payment would decelerate and reinstate the mortgage pursuant to the Fair Foreclosure Act.
As to the taxing of search fees, this court exercises its discretion under R. 4:42-10 and orders an affidavit be submitted by plaintiff pursuant to R. 4:42-10(b) as to actual costs for the search which if reasonable will be assessed to defendant.
Counsel for plaintiff to submit an appropriate form of Order.