850 A.2d 456

KAREN SMITH, INDIVIDUALLY AND AS GUARDIAN AD LITEM FOR BRENDEN WASNIEWSKI, A MINOR, PLAINTIFF–APPELLANT, v. FIREWORKS BY GIRONE, INC.; DEPTFORD PARKS & RECREATION; DEPTFORD FUN DAY COMMITTEE; LEXINGTON INSURANCE COMPANY; WILLIAM DUKES AND COMPANY; WESTERN RISK SPECIALISTS, INC.; ISU INSURANCE SERVICE OF SAN FRANCISCO; ELLEN QUINE; JOHN DOE # 1–10 (FICTITIOUS NAME OF INDIVIDUALS, SOLE PROPRIETORSHIPS, PARTNERSHIPS AND/OR CORPORATIONS WHO OWNED, OCCUPIED, MAINTAINED, INSPECTED, REPAIRED AND/OR CONTROLLED THE AREA KNOWN AS FASOLA PARK); JOHN DOE # 11–50 (FICTITIOUS NAME OF INDIVIDUALS EMPLOYED BY FIREWORKS BY GIRONE, INC., TOWNSHIP OF DEPTFORD, DEPTFORD PARKS & RECREATION, DEPTFORD FUN DAY COMMITTEE, JOHN DOE # 1–10 AND/OR ABC CORPORATION # 1–5); AND ABC CORPO-

RATION # 1–5 (FICTITIOUS NAME OF INDIVIDUALS, SOLE PROPRIETORSHIPS, PARTNERSHIPS AND/OR CORPORATIONS IN CHARGE OF SETUP, PERFORMANCE AND/OR CLEAN-UP OF "PYRO THEATRICAL" FIREWORKS); I/J/S/A, DEFENDANTS, AND TOWNSHIP OF DEPTFORD, DEFENDANT–RESPONDENT.

Argued February 19, 2004—Decided June 23, 2004.

*Louis J. DeVoto* argued the cause for appellant (*Ferrara, Rossetti & DeVoto* and *Norris, McLaughlin & Marcus,* attorneys).

*Robert A. Hicken* argued the cause for respondent (*Capehart & Scatchard,* attorneys; *Patricia L. Dee* on the brief).

Justice LONG delivered the opinion of the Court.

On this appeal we are asked to interpret the language of the New Jersey Tort Claims Act (TCA) that requires, as a prerequisite to public entity liability, that the public property must be in a "dangerous condition at the time of the injury." *N.J.S.A.* 59:4–2. Here, the ten-year-old plaintiff suffered severe damage to his left hand after successfully igniting a firework he found in a municipal park following a municipal fireworks display. The explosion occurred on private property over a month after the child removed

the firework from the park. Plaintiff sued and the public entity moved for summary judgment claiming, among other things, that plaintiff failed to satisfy the requirement in *N.J.S.A.* 59:4–2 that the public entity's property be in a dangerous condition at the time of the injury. The trial court denied the motion and a jury awarded a substantial verdict in plaintiff's favor.

The public entity appealed and a divided panel of the Appellate Division reversed. The majority held that the firework was neither owned nor controlled by the public entity and that the infant plaintiff's removal of it from the park prevented the conclusion that the public property (the park) remained in a "dangerous condition at the time of the injury." The dissent countered that plaintiff's injury was an inevitable and foreseeable result of harmful "contact" or "exposure" to a dangerous condition on public property and fell squarely within the contemplation of the TCA.

Because we are satisfied that the conclusion of the dissenting opinion more closely conforms with the legislative intent underlying that Act, we now reverse.

## I

In 1997, plaintiff Karen Smith, individually and in her capacity as the guardian *ad litem* of Brenden Wasniewski (collectively plaintiffs), filed a lawsuit against the Township of Deptford, Deptford Parks and Recreation, Deptford Fun Day Committee (collectively Deptford), and Fireworks by Girone, Inc. (Girone), alleging that Brenden was injured as a result of a dangerous condition on public property for which all named defendants were responsible.

The facts underlying the claim essentially are uncontroverted and are distilled from the summary judgment documents and proceedings. Deptford owns and maintains Fasola Park, a recreational area containing basketball courts, baseball fields, a swimming pool, walking trail, and picnic area. The park is the setting for "Deptford Day," an annual festival held in May. To celebrate Deptford's tricentennial, the 1995 Deptford Day was scheduled to

culminate in the largest fireworks display ever held in connection with that event.

In anticipation of Deptford Day, Deptford entered into a contract with Girone to conduct the fireworks display. Under the terms of the contract, Girone guaranteed a "Thorough Check Of The Area For Any Misfired Shells" on the night of the show. Deptford, in turn, assumed responsibility for the post-display clean-up: "CUSTOMER will also be RESPONSIBLE for all POST DISPLAY CLEAN–UP with respect to removal of debris and POLICING of area AT FIRST LIGHT following the exhibition." Both the Fire Marshal and the President of Girone testified in depositions that if unspent shells were found, Girone was to be notified immediately to come and reclaim them; municipal officials were not to touch those items.

Following the display on the evening of May 20, Girone employees and Deptford's Fire Marshal, using high-powered lamps provided by the Fire Department, conducted a post-display search. That search resulted in the recovery of at least six potentially live fireworks, all of which were turned over to Girone. The following morning, the Fire Marshal returned to the park to search for additional fireworks in accordance with the contract. After two hours, although he found debris, he found no more unexploded charges.

A week after the display, Brenden Wasniewski picked up fireworks and firework debris, both on and near the launch site at Fasola Park. He disposed of all but the largest firework, ultimately hiding it at home. On July 3, Brenden and a friend took the firework to a nearby wooded area, treated it with gasoline and repeatedly cut away the cardboard encasing the actual charge. Eventually the firework exploded in Brenden's left hand, causing severe injuries. Subsequently, a private investigator hired by plaintiffs found an additional unspent firework in Fasola Park.

After extensive discovery, Deptford moved for summary judgment on a variety of issues. For purposes of this appeal, the pertinent claim is Deptford's assertion that plaintiffs' cause of

action is precluded because it fails to satisfy the TCA requirement that the public property be in a dangerous condition at the time of the injury.

The trial court denied the motion, holding that the combination of the firework and the park constituted a consolidated dangerous condition that satisfied the TCA. According to the court, that dangerous condition was capable of creating a "continuing injury" that began when Brenden picked up the firework and ended when it exploded weeks later.

Plaintiffs settled their claims against Girone and the case against Deptford proceeded to a trial on all issues. The jury returned a verdict in plaintiffs' favor. In so doing, it found as follows: (1) after the fireworks display, the unexploded firework created a dangerous condition at Fasola Park; (2) the dangerous condition was a proximate cause of Brenden's accident; (3) the dangerous condition created a foreseeable risk of injury; (4) Deptford's action or inaction was palpably unreasonable; (5) Girone was negligent; (6) Girone's negligence was a proximate cause of Brenden's injuries; (7) Brenden was negligent; and (8) his negligence was a proximate cause of his own injuries. The jury returned a $1,600,000 verdict for plaintiffs and apportioned liability to Deptford at 56%, Girone at 33%, and Brenden at 11%; that is, $896,000 against Deptford, $528,000 against Girone, with $176,000 allocated to Brenden's comparative negligence.

Deptford appealed and a divided panel of the Appellate Division reversed the denial of the motion for summary judgment. The majority presumed for the purposes of its opinion that a dangerous condition existed at Fasola Park by virtue of the unexploded firework. The court went on to hold that Deptford did not "own" the firework and that when Brenden removed the firework from the park the public entity lost "control" of it. Concomitantly, the court concluded that the park was not in a "dangerous condition at the time of the injury" because Brenden's removal of the firework rendered it safe at that critical point.

In reaching an opposite conclusion, Judge Wecker, dissenting, stated:

> In my view, it is counterintuitive to conclude that by picking up the firework and taking it home with him (thereby curing the dangers to others), the very danger that the entity's negligence created, Brenden has relieved the town of all responsibility for its own palpably unreasonable failure to clean up after the fireworks display.

> . . .

> The temporal separation between Brenden's picking up the firework and his actually setting it off is what the majority finds fatal to his recovery. To the contrary, I view that separation in time as part of the logical, predictable chain of events prompted by the dangerous condition.

> Another way to express my view of the first required element of the cause of action for the injury resulting from a dangerous condition of public property is to consider the word "injury" in this section more broadly than immediate physical injury and to include harmful "contact" or "exposure" that sets into motion a predictable, if not inevitable, resulting injury.

> [Footnote omitted.]

Plaintiffs appeal as of right based on the dissent.[1]  *R.* 2:2–1(a)(2).

## II

Plaintiffs argue that Deptford was the title owner of, or otherwise controlled, the errant firework by contractually assuming responsibility for the post-display cleanup; that the firework itself constituted the dangerous condition of public property, thus satisfying the "dangerous condition at the time of the injury" element of *N.J.S.A.* 59:4–2; and that, in any event, a literal reading of the TCA to bar its claim would be inconsistent with the legislative intent.

Deptford counters that the fireworks were not public property because its contract with Girone was for services only; that the assumption of some cleanup duties was insufficient to transfer control; that Brenden's removal of the firework eliminated the

---

[1] A petition for certification on an unrelated surety issue remains pending.

possibility of public control; that the removal rendered the park safe at the time of Brenden's injury; and, that the dissenting opinion below would not only chill a municipality's willingness to undertake recreational activities for its citizens, but would run counter to the legislative intent underlying the TCA.

## III

■ In *Willis v. Dept. of Conservation & Economic Development*, 55 *N.J.* 534, 537–38, 264 *A.2d* 34 (1970), this Court abrogated the blanket of sovereign immunity that had insulated the State completely from liability in tort. The Legislature thereafter responded by enacting the TCA. *Malloy v. State*, 76 *N.J.* 515, 518–19, 388 *A.2d* 622 (1978). Although acknowledging the "inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity," *Kahrar v. Borough of Wallington*, 171 *N.J.* 3, 19, 791 *A.2d* 197 (2002) (Verniero, J., dissenting) (citing *N.J.S.A.* 59:1–2), the dominant theme of the TCA was to reestablish the immunity of all governmental bodies in New Jersey, subject only to the TCA's specific liability provisions. *Garrison v. Tp. of Middletown*, 154 *N.J.* 282, 286, 712 *A.2d* 1101 (1998); *Rochinsky v. State, Dep't of Transp.*, 110 *N.J.* 399, 407–08, 541 *A.2d* 1029 (1988). Therefore, in balancing the liability and immunity provisions of the TCA, "immunity is the rule and liability the exception." *Posey ex rel. Posey v. Bordentown Sewerage Auth.*, 171 *N.J.* 172, 181–82, 793 *A.2d* 607 (2002) (citing *N.J.S.A.* 59:2–1a).

■ In this case, we are not presented with a conflict among the TCA's liability provisions and any statutory or common-law immunity. *See N.J.S.A.* 59:2–1b; *Rochinsky, supra,* 110 *N.J.* at 408–11, 541 *A.2d* 1029; *see also N.J.S.A.* 59:2–1.1 to 2–11 (detailing several specific statutory immunities). Plainly, liability for a dangerous condition of public property is expressly provided for in the Act:

A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that

the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

b. a public entity had actual or constructive notice of the dangerous condition under section 59:4–3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or failure to take such action was not palpably unreasonable.

[*N.J.S.A.* 59:4–2.]

## *N.J.S.A.* 59:4–1, in turn, defines these terms as follows:

As used in this chapter:

a. "Dangerous condition" means a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used.

b. "Protect against" includes repairing, remedying or correcting a dangerous condition, providing safeguards against a dangerous condition, or warning of a dangerous condition.

c. "Public property" means real or personal property owned or controlled by the public entity, but does not include easements, encroachments and other property that are located on the property of the public entity but are not owned or controlled by the public entity.

## The 1972 Task Force Comments to *N.J.S.A.* 59:4–2 provide,[2] in relevant part that:

This provision sets forth the conditions of liability under which a public entity may be held liable for the dangerous conditions of its property. This provision comports generally with the principles of liability established by the New Jersey courts for local public entities in their capacity as landowners. *See B.W. King, Inc., v. West New York,* 49 *N.J.* 318, 230 *A.2d* 133 (1967); *Miehl v. Darpino,* 53 *N.J.* 49, 247 *A.2d* 878 (1968); *Hoy v. Capelli,* 48 *N.J.* 81, 222 *A.2d* 649 (1966); *Amelchenko v. Freehold Borough,* 42 *N.J.* 541, 201 *A.2d* 726 (1964); *Henry Clay v. Jersey City,* 74 *N.J.Super.* 490, 181 *A.2d* 545 (Ch.Div.1962). It is anticipated that this section will be developed to the extent possible in accordance with common law principles of landowner liability.

---

[2] The comments appended to the TCA by the Attorney General's Task Force "have precedential weight and the value of legislative history." *Rochinsky, supra,* 110 *N.J.* at 407 n. 4, 541 *A.2d* 1029.

[*Attorney General's Task Force on Sovereign Immunity*, comment to *N.J.S.A.* 59:4–2 (1972), as found in, Margolis & Novak, *Claims Against Public Entities*, comment on *N.J.S.A.* 59:4–2, 107 (Gann 2004).]

That is the backdrop for our inquiry.

## IV

The Appellate Division determined that Deptford should have been granted summary judgment because plaintiffs failed to satisfy the temporal requirement in *N.J.S.A.* 59:4–2 that the public property be in a "dangerous condition at the time of the injury." That is the sole issue before us.

### A.

We turn first to plaintiffs' contention that the firework was owned or controlled by Deptford, and that it constituted the public property that was in a dangerous condition at the time of Brenden's injury. We agree with the Appellate Division that Deptford did not own the firework. As noted, Deptford's contract with Girone was for services and not for goods. Indeed if all had gone as planned, all of the fireworks would have been destroyed in the show. Put another way, the contract was to eliminate the fireworks and not to transfer ownership to the town.

Recognizing, however, that all of the fireworks might not be disposed of during the display, the contract specifically provided that Girone would search for and retrieve "misfired shells" on the night of the show. Although Deptford undertook first-light cleanup of "debris," along with a "policing" function, the testimony of the Fire Marshal and the president of Girone established that if any unspent shells were found at Fasola Park, Girone was to be called to the scene immediately to retrieve them. Under no circumstances were the municipal officials even to "pick up" the unexploded fireworks.

Clearly, then, there is no support for the notion that Deptford became the title owner of the errant firework within the meaning of *N.J.S.A.* 59:4–1. Moreover, even if Deptford could be said to

have temporarily "controlled" the firework while it was present at Fasola Park, *see Posey, supra,* 171 *N.J.* at 183–85, 793 *A.*2d 607 (discussing *State v. Schmidt,* 110 *N.J.* 258, 267, 540 *A.*2d 1256 (1988)), Brenden's removal of it from the park ended that control. In short, we agree with the Appellate Division majority that, at the moment of Brenden's injury, Deptford neither owned nor controlled the firework, thus precluding the firework itself from being characterized as the dangerous public property.

We assume for this analysis, as did all of the courts below, that the dangerous condition of public property was the combination of the unexploded firework and the public park. The pivotal question is whether the language of *N.J.S.A.* 59:4–2 that requires the public property to be in a "dangerous condition at the time of the injury" was satisfied when Brenden was injured on private property after removing the firework from the park.

### B.

The Appellate Division's negative answer to that question was fueled, in part, by the idea that plaintiffs' cause of action is a "novel one" under the TCA that courts should "exercise restraint" in accepting. *Attorney General's Task Force on Sovereign Immunity, supra; e.g., Burg v. State,* 147 *N.J.Super.* 316, 320, 371 *A.*2d 308 (App.Div.), *certif. denied,* 75 *N.J.* 11, 379 *A.*2d 242 (1977). Our research reveals that that conclusion is flawed. According to the Attorney General's Task Force, *N.J.S.A.* 59:4–2 was meant to comport with common-law principles of landowner liability. Under the common-law, landowners were liable for injury resulting from dangerous conditions on their property. *See Snyder v. I. Jay Realty Co.,* 30 *N.J.* 303, 311, 153 *A.*2d 1 (1959) (affirming historically based view of common-law duty owed by landowner); *Vega by Muniz v. Piedilato,* 154 *N.J.* 496, 502, 713 *A.*2d 442 (1998) (finding distinctions of personal status at common-law arise from culture deeply rooted in land); *Hopkins v. Fox Lazo Realtors,* 132 *N.J.* 426, 625 *A.*2d 1110 (1993) (noting common-law tradition of landowner liability). Because of that, claims against public enti-

ties generally premised on common-law theories of landowner liability have not been considered novel. *Bligen v. Jersey City Hous. Auth.*, 131 *N.J.* 124, 134–35, 619 *A.*2d 575 (1993) (imposing liability on housing authority that failed to use due care to safeguard its premises by clearing ice is not "novel").

Nor are fireworks liability cases somehow distinct. At common law, private landowners holding fireworks displays were not immune from damages to children injured by unexploded shells after the exhibition. *See Spenzierato v. Our Lady Monte Virgine Soc. of Mut. Benefit of E. Orange, N.J.*, 112 *N.J.L.* 93, 169 *A.* 831 (E. & A.1934); *Doughty v. Atlantic City Bus. League*, 80 *A.* 473 (N.J. E. & A.1911); *Sebeck v. Plattdeutsche Volkfest Verein*, 64 *N.J.L.* 624, 46 *A.* 631 (E. & A.1900). Moreover, public entities sponsoring such fireworks displays have been held to the same standard as private landowners. *See, e.g., Cook v. Gettysburg Borough*, 39 *Pa. D. & C.* 4th 342, 346 (Pa.Com.Pl.1997) (finding cause of action based on infant plaintiff's injury on private property after removal of unexploded firework from public park fell within real property exception to Pennsylvania TCA); *Lottes v. Pessina*, 174 *S.W.*2d 893, 897 (Mo.Ct.App.1943) (holding removal of errant explosive by child from public park and subsequent injury on private property did not absolve city of liability); *Kingsland v. Erie County Agr. Soc.*, 298 *N.Y.* 409, 84 *N.E.*2d 38, 46 (1949) (determining removal of fireworks from public park by child who was subsequently injured on private property readily foreseeable); *see also* T.C. Williams, Annotation, *Liability for Injury by Explosive or The Like Found By, or Left Accessible To, a Child*, 10 *A.L.R.*2d 22 (1950).

It may be that the Appellate Division viewed the circumstances of this case as somehow unusual because the injury took place off the public premises. However, the opposite is true. "[I]n the majority of the cases in our courts as well as the courts of other States involving explosives, the injured child has taken the explosive either to his home or to some other place than where he found it before being injured." *Lottes, supra*, 174 *S.W.*2d at 896.

Further, our courts specifically have recognized that injuries occurring off dangerous public property are neither novel nor insulated from liability. In *Saldana v. DiMedio,* 275 *N.J.Super.* 488, 646 *A.*2d 522 (App.Div.1994), a series of fires spread from an old building on public property causing damage to surrounding private property. The trial court granted summary judgment to the public entity. *Id.* at 494, 646 *A.*2d 522. The Appellate Division reversed and allowed the plaintiff's action to go forward. *Id.* at 506–07, 646 *A.*2d 522. In so doing, the court held that it was for the jury to determine whether dilapidated city buildings were a dangerous condition of public property that caused injury on private property even though the damage was also caused by unauthorized persons in the buildings who started the fires. *Id.* at 501–03, 646 *A.*2d 522. According to the Appellate Division, independent intervening acts did not absolve Camden from liability as a landowner for the condition of the property, which, together with the intervening acts, caused the damage. *Id.* at 503, 646 *A.*2d 522.

In *Roe by M.J. v. N.J. Transit Rail Operations, Inc.,* 317 *N.J.Super.* 72, 721 *A.*2d 302 (App.Div.1998), *certif. denied,* 160 *N.J.* 89, 733 *A.*2d 494 (1999), a twelve year-old plaintiff took a shortcut to a swimming pool through a New Jersey Transit Train Station gate that was bolted into an open position. The gate opened onto park land under a highway overpass. The area was poorly lit, surrounded by thick vegetation and had a history, known to the authorities, of criminal assault. The New Jersey Transit route into the park was regularly taken by citizens. On the day in question, a man dragged the plaintiff off and raped her as she crossed through the gate. The trial court granted summary judgment to New Jersey Transit. The Appellate Division reversed, concluding that even though the injury took place in the park, a jury could determine that by bolting its gate open, New Jersey Transit invited the public "to traverse the perilous foot path under the I–280 overpass, thereby substantially enhancing the public's risk of harm." *Id.* at 82, 721 *A.*2d 302. In sum, the court recognized that a dangerous condition *on* public property could underpin liability for injuries occurring *off* the site where the

dangerous condition of public property "increased the risk that persons accepting the invitation [to walk through the gate] would encounter the dangers lurking beyond the gate." *Id.* at 80, 721 *A.*2d 302.

In *Ayers v. Jackson Township,* 106 *N.J.* 557, 565, 525 *A.*2d 287 (1987), contamination in a landfill operated by a public entity leached into and poisoned an aquifer that, in turn, supplied the private wells of Jackson Township residents. In that case, the public entity was not insulated from liability although the injury complained of took place on private property some distance from the dangerous landfill.

Finally, in *Posey, supra,* we were faced with a case involving a culvert owned by a public entity that led to a pond on private property in which a child drowned. Plaintiff sued on the theory that the unexpected drop-off in the private pond was caused by scouring or channeling created by the force of the water running through the culvert as part of the public entity's storm drainage system. The trial court granted summary judgment to the public entity and the Appellate Division affirmed. We reversed, holding that a public entity can be liable for injuries occurring on private property if they are caused by its "activities" on public property. *Id.* at 184, 793 *A.*2d 607. More particularly, we held that the public entity "treated" the private property as its own by using it as part of an integrated storm drainage system and thus was liable because it "controlled the property" within the meaning of *N.J.S.A.* 59:4–1. *Ibid.*

Although those cases are not identical to each other or to this case, what can be distilled from them is that there is nothing novel or unusual about holding a public entity liable for foreseeable injury caused by a dangerous condition on public property even if the injury occurs off the public premises. In short, we see no basis whatsoever for denominating plaintiffs' claim as novel.

## C.

In this case, however, we are faced with the specific language of the TCA that requires the public property to be in a "dangerous

condition at the time of the injury." The Appellate Division held that Brenden's removal of the firework essentially rendered Fasola Park "safe" at the time of the injury, thus confounding the statutory requirement. However, plaintiffs submitted evidence on the motion for summary judgment that, after Brenden's accident, at least one more unexploded firework was found at Fasola Park. That evidence established, at least for the motion, that the park *was still* in a dangerous condition when Brenden was injured several weeks after the fireworks display. Therefore, applying summary judgment standards, (that is, according plaintiffs the benefit of all favorable evidence and inferences, *see Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 523, 666 A.2d 146 (1995)), the complaint should have survived Deptford's motion. The case could end here.

▮ It seems to us, however, that that happenstance is not a principled basis on which to decide the matter. Rather we need to address a broader question: Did the Legislature intend *N.J.S.A.* 59:4–2 to be interpreted in such a way that there can be public entity liability where a child comes upon a live firework in a public park and is injured when it explodes on the spot, but that there would be public entity immunity if the same child finds the live firework in the park and carries it across the street to private property where it explodes and injures him?

To answer that question, we return to the language of the TCA:

A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred.

[*N.J.S.A.* 59:4–2.]

The Legislative history of the Act is silent regarding the words at issue here and no New Jersey case has ever addressed them. Our research further reveals that among the tort claims statutes of our sister jurisdictions, only two incorporate the "at the time of the injury" language, *see Mo.Rev.Stat.* § 537.600 (West 2004); 2004 *Cal. Legis. Serv.* § 835, and that no court in either state has been

called upon to interpret it. Thus, we are writing on a proverbial clean slate.

▆ Plaintiffs argue, and the Appellate Division rejected, properly we think, the view that the "at the time of the injury" language is a restatement of proximate cause. As a perusal of *N.J.S.A.* 59:4–2 reveals, the statute separately enunciates dangerous condition, forseeability and proximate cause as elements of liability. Under plaintiffs' view, the language at issue would be entirely duplicative. *State v. Reynolds,* 124 *N.J.* 559, 564, 592 *A.*2d 194 (1991) (courts should avoid construction that will render part of a statute meaningless); *447 Assocs. v. Miranda,* 115 *N.J.* 522, 530, 559 *A.*2d 1362 (1989) (same).

▆ Nor can we countenance the suggestion that the intent of that language was that public entities are to be liable for injuries that occur *only* at the point in time and at the location of the dangerous condition. Our courts have rejected that interpretation consistently for over seventeen years, *see Saldana, supra, Roe, supra, Posey, supra,* and *Ayers, supra,* in favor of allowing recovery for injuries occurring on private property after the passage of time, so long as the injury was foreseeable and was proximately caused by the dangerous condition on public property.

> In construing a statute it is to be assumed that the Legislature is thoroughly conversant with its own legislation and the judicial construction placed thereon. *Barringer v. Miele,* 6 *N.J.* 139, 144, 77 *A.*2d 895 (1951). And the construction of a statute by the courts, supported by long acquiescence on the part of the Legislature or by continued use of the same language or failure to amend the statute, is evidence that such construction is in accord with the legislative intent. *Egan v. Erie R. Co.,* 29 *N.J.* 243, 250, 148 *A.*2d 830 (1959).
>
> [*Quaremba v. Allan,* 67 *N.J.* 1, 14, 334 *A.*2d 321 (1975).]

We therefore must assume that whatever initially brought about the insertion of the language at issue into the TCA, the Legislature is now satisfied that the ultimate injury sustained by a plaintiff need not occur at the time and location of the dangerous condition on public property for public entity liability to attach.

▆ However, knowing what a statute does not mean is a far cry from the contrary, as Deptford's failure to proffer a single

rationale for the disputed language reveals. Deptford simply urges us to interpret the words literally as requiring the public property to "remain" in a dangerous condition at the time of injury, despite its inability to suggest any reason for such a requirement. However, it is well settled that statutory construction should not turn on literalisms, but on the objectives of the legislation and the common sense of the situation. *Velazquez ex rel. Velazquez v. Jiminez,* 172 *N.J.* 240, 257, 798 *A.*2d 51 (2002) (quoting *LaFage v. Jani,* 166 *N.J.* 412, 431, 766 *A.*2d 1066 (2001)). On that backdrop and given the design of the TCA, we conclude that the literal and hyper-technical interpretation accorded the "dangerous condition at the time of the injury" language by the appellate majority cannot stand. That interpretation results in the conclusion that a child who finds a left-over firework in a public park and is injured on the spot has recourse against a careless public entity, but that a child who picks up the firework and takes it across the street to his home where he is killed or maimed, a likely more common scenario, is remediless. Not only is that unreasonable, it flies in the face of the overall purpose of *N.J.S.A.* 59:4-2, which is to hold a public entity liable for the dangerous condition of its property.

To be sure, this case is not a perfect fit with the words of *N.J.S.A.* 59:4-2. However, the same can be said of *Saldana, Roe, Posey,* and *Ayers.* Those cases teach us that our courts have been willing to approach the language in the TCA in accordance with Chief Justice Weintraub's instructions to us that:

> It is frequently difficult for a draftsman of legislation to anticipate all situations and to measure his words against them. Hence cases inevitably arise in which a literal application of the language used would lead to results incompatible with the legislative design. It is the proper function, indeed the obligation, of the judiciary to give effect to the obvious purpose of the Legislature, and to that end "words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms." *Alexander v. New Jersey Power Light Co.,* 21 *N.J.* 373, 378, 122 *A.*2d 339 (1956); *Wright v. Vogt,* 7 *N.J.* 1, 6, 80 *A.*2d 108 (1951); *Glick v. Trustees of Free Public Library,* 2 *N.J.* 579, 584, 67 *A.*2d 463 (1949).
>
> [*New Capitol Bar & Grill Corp. v. Div. of Employment Sec.,* 25 *N.J.* 155, 160, 135 *A.*2d 465 (1957).]

So informed, we interpret the requirement that public property be "dangerous at the time of the injury" as having two distinct parts. One is the element of dangerousness that is derived from common-law landowner liability principles. The other is the "at the time of the injury" notion. Although the former is obviously mandatory, the latter is not. Rather we view it as a reflection of what the Legislature expected the heartland of TCA cases to be. That expectation generally was correct. Most "dangerous condition" cases involve injuries occurring at the point of danger. People fall on ice and tumble over loose guardrails. Nevertheless, as this matter demonstrates, occasionally a dangerous condition on public property leads ineluctably and foreseeably to an injury on private property at a point at which the public property may no longer be dangerous. We believe that band of cases escaped the attention of the draftsman of *N.J.S.A.* 59:4–2, *see National City Mortgage v. Smith,* 324 *N.J.Super.* 509, 515, 735 *A.*2d 1221 (Ch. Div.1999), and that if faced with the question presented, the Legislature would not subscribe to the Appellate Division's literal view.

We hold, therefore, that when a public entity creates or suffers a dangerous condition on public property that leads ineluctably and foreseeably to injury, it is not insulated from liability under *N.J.S.A.* 59:4–2, even if the ultimate injury takes place off the public site at a point at which the public premises is no longer dangerous.

### V

The judgment of the Appellate Division is reversed.

Justice LaVECCHIA, dissenting.

The majority seemingly concedes that there is no "principled" way to fit the facts of this case within the requirement of *N.J.S.A.* 59:4–2 that public property be "dangerous at the time of the injury" for liability to attach. *Ante* at 214, 850 *A.*2d at 465. The public property here simply was not in a dangerous condition

when plaintiff suffered his injury. Plaintiff had removed the dangerous article from public land, transported it to private property, where it exploded weeks later—after tampering by plaintiff—causing injury.

To save the cause of action the majority simply dispenses with the required temporal element. The majority concludes that although the statutory definition of the cause of action is written in mandatory terms, the Legislature must have intended that the requirement would be dispensed with in cases such as this, where it could not be satisfied. Otherwise, posits the majority, a whole category of plaintiffs—those who remove dangerous articles from public land and are injured by them on private property at a later time ("the transport cases")—will be without remedy against the public entity. The majority apparently abhors that result and thinks the Legislature would as well. That, in its opinion, justifies its disregard of a clearly stated statutory mandate. I disagree and would affirm the decision of the Appellate Division.

The New Jersey Tort Claims Act, *N.J.S.A.* 59:1–1 to 12–3(TCA), unequivocally requires that the public property be in a dangerous condition "at the time of injury," *N.J.S.A.* 59:4–2, as a necessary element of the cause of action. The legislative language cannot be ignored. It is a material requirement in the Legislature's integrated scheme limiting when liability will be permitted for dangerous conditions on public property. The Legislature, in adopting the TCA, did not intend to provide a remedy for all plaintiffs, so we should not be surprised or offended that some plaintiffs—like those in the transport cases—will be without remedy. The temporal requirement serves an important safeguard in the legislative scheme and should be enforced.

## I.

The principles guiding application of the TCA are settled. It is well known that as a direct result of the Court's abrogation of common law sovereign immunity in *Willis v. Department of Cons.& Econ. Dev.*, 55 *N.J.* 534, 264 A.2d 34 (1970), the Legisla-

ture reestablished the immunity through the TCA, stating that "[e]xcept as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." *N.J.S.A.* 59:2-1. "The theme of the [TCA] is immunity for public entities with liability as the exception." *Gilhooley v. County of Union,* 164 *N.J.* 533, 538, 753 *A.*2d 1137 (2000) (citing *Collins v. Union County Jail,* 150 *N.J.* 407, 413, 696 *A.*2d 625 (1997)). Where "both liability and immunity appear to exist, the latter trumps the former." *Tice v. Cramer,* 133 *N.J.* 347, 356, 627 *A.*2d 1090 (1993).

The TCA's declarations section explains:

> The Legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity. On the other hand the Legislature recognizes that while a private entrepreneur may readily be held liable for negligence within the chosen ambit of his activity, the area within which government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done. Consequently, it is hereby declared to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein. All of the provisions of this act should be construed with a view to carrying out the above legislative declaration.
>
> [*N.J.S.A.* 59:1-2.]

*See also The Report Attorney General's Task Force on Sovereign Immunity* 210, comment to *N.J.S.A.* 59:2-1 (1972) (Task Force Comment) (stating that when applying TCA courts should ask *"whether an immunity applies and if not, should liability attach"* (emphasis in the original)). Thus, we repeatedly have reminded courts to "approach these cases from the perspective that immunity is the dominant theme of the Act," *Civalier v. Estate of Trancucci,* 138 *N.J.* 52, 59, 648 *A.*2d 705 (1994) (citing *Weiss v. New Jersey Transit,* 128 *N.J.* 376, 383, 608 *A.*2d 254 (1992)), and that the liability exceptions are narrow. *Vincitore ex rel. Estate of Vincitore v. New Jersey Sports & Expo. Auth.,* 169 *N.J.* 119, 124, 777 *A.*2d 9 (2001). The exceptions must be construed consistent with the TCA's theme of broadly limiting public entity liability. *See* Margolis and Novack, *Claims Against Public Enti-*

*ties,* comment to *N.J.S.A.* 59:1–2 (2003). It was never the intention of the Legislature to put government on the same footing as private parties.

Turning to the pertinent liability provision with those principles in mind, *N.J.S.A.* 59:4–2 provides that

[a] public entity is liable for injury caused by a condition of its property if the plaintiff establishes that *the property was in dangerous condition at the time of the injury,* that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

b. a public entity had actual or constructive notice of the dangerous condition under section 59:4–3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

[ (Emphasis added).]

The TCA defines "dangerous condition" as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used"; and defines "public property" as "real or personal property owned or controlled by the public entity." *N.J.S.A.* 59:4–1a, –1c. Liability attaches, however, only when the public property is in a dangerous condition "at the time of the injury."

The majority dispenses with the "time of" requirement because it obviously cannot be met in "transport cases" such as the one before us, and foreclosing liability seems to fly in the face of what it perceives as legislative acceptance of caselaw allowing recovery under the principle that "the ultimate injury sustained by a plaintiff need not occur at the time and location of the dangerous condition on public property for public entity liability to attach." *Ante* at 215, 850 *A.2d* at 466. It also purports to find support for its conclusion in the Task Force Comment to *N.J.S.A.* 59:4–2. Neither argument is sound.

First, addressing the Task Force Comment, the majority quotes the Comment as explaining that in setting forth the "conditions of liability under which a public entity may be held liable for the dangerous conditions of its property" the provision intended to "comport[ ] generally with the principles of liability established ... for local public entities in their capacity as landowners," *Ante* at 208, 850 *A.*2d at 462, and that the provision would develop "in accordance with common law principles of landowner liability." *Ante* at 208, 850 *A.*2d at 462. From that the majority finds support for its proposition that, despite the language of its enactment, the Legislature meant to incorporate in full landowner liability common law concerning dangerous conditions of property. The majority did not include in its analysis the second paragraph of that Comment, which provides:

> This section recognizes the difficulties inherent in a public entity's responsibility for maintaining its vast amounts of public property. Thus it is specifically provided that when a public entity exercises or fails to exercise its discretion in determining what action should or should not be taken to protect against the dangerous condition that judgment should only be reversed where it is clear to the court that it was palpably unreasonable. *Bergen v. Koppenal,* 52 *N.J.* 478, 480, 246 *A.*2d 442 (1968). That decision was based on the thesis that a public entity's discretionary decisions to act or not to act in the face of competing demands should generally be free from the second guessing of a coordinate branch of Government. In addition, a public entity is not prohibited from asserting the traditional common law defenses to liability.

[*Task Force Comment, supra,* at 221, comment to *N.J.S.A.* 59:4-2.]

The above portion of the Comment reflects that the TCA was establishing a complex analysis involving multiple inquiries concerning the alleged dangerous condition of public property. Within that framework, the Legislature has connected, in no uncertain terms, the dangerous condition on public property to the time of injury as a limitation for liability to attach. Moreover, the time of injury and its connection to the dangerous condition of public property also has relevance in the inquiry concerning public entity notice of the condition and in the assessment of the public entity's reaction to the dangerous condition under the palpably unreasonable test. *N.J.S.A.* 59:4-2b. Again, its effect is limiting. Not all

dangerous conditions on public property were made potential sources of liability. Instead, only those that the public entity should know of and could react to may be a basis for liability, subject to consideration of allocation of public resources and a palpably unreasonable reaction by the public entity. The temporal condition plays a limiting role in each analysis.

A temporal connection provides the link between the property under the public entity's control, the dangerous condition, and the injury to be prevented. Nowhere in this legislative scheme for imposing liability is there a suggestion that the public entity was meant to be liable simply because a dangerous article once occupied its property and later, after it had been removed, caused injury. The Task Force Report therefore does not support the majority's disregard of the "at the time of" requirement.

Furthermore, the language is not ambiguous and in need of judicial construction. The majority simply is redrawing the terms of the statutory provision to suit its perceived belief that the Legislature would have intended liability to exist in this instance. That is contrary to how this Court has approached the TCA in the past. Nor is it consistent with past judicial applications of *N.J.S.A.* 59:4–2 in particular.

The primary focus must be whether the park was in a "dangerous condition" at the time of the injury. As our holdings consistently reflect, "dangerous condition" refers only to "the physical condition of the property itself and not to activities on the property." *Levin v. County of Salem,* 133 *N.J.* 35, 44, 626 *A.*2d 1091 (1993) (citation omitted and internal quotation marks omitted). *See also* Margolis and Novack, *supra,* comment to *N.J.S.A.* 59:4–1. "Absent a defect in the property itself that creates a substantial risk of injury there should be no superimposed liability for protecting persons against their own or other persons activities." Margolis and Novack, *supra,* comment to *N.J.S.A.* 59:4–1. And, as noted, "[t]he existence of a dangerous condition is only one of the essential elements of the cause of action against the public

entity. It is not the cause of action itself." *Robinson v. City of Jersey City*, 284 *N.J.Super.* 596, 599, 666 *A.*2d 169 (App.Div.1995).

The majority agrees with the Appellate Division below that the firework is not "the dangerous condition on public property" because it is not public property. *Ante* at 210, 850 *A.*2d at 463. The majority finds that it is only the brief combination of the park property and the firework together that brings about a dangerous condition on public property for which the public entity may be held liable. That would be so pursuant to *N.J.S.A.* 59:4–2 had the injury occurred at that time. The Legislature made it the public entity's responsibility to prevent that combination from happening on public property and causing injury at that time. The TCA does not make the public entity liable into the future for that combination of events. The majority's construction renders meaningless the palpably unreasonable analysis, which is intended to operate as an incentive for public entities to ferret out dangerous conditions on their property and to eliminate the danger of injury from them.

We have not dealt previously with the question whether a party may recover for injuries sustained from an object that was obtained in a public park and later transported to private property where injury occurred a few weeks later. Although the majority may not see the cause of action as novel, it has novelty in that sense. That said, we have permitted recovery against a public entity for injuries sustained on private property only in limited instances when consistent with a fair reading of the language of the dangerous condition on public property provision. In *Posey ex rel. Posey v. Bordentown Sewerage Auth.*, 171 *N.J.* 172, 187–88, 793 *A.*2d 607 (2002), a public entity was held liable for injuries that occurred on adjacent private property when the public entity "creat[ed] a dangerous condition on private property that is under the 'control' of the public entit[y]." Absent a showing of public entity "control" of a dangerous condition that has been created on private property, liability otherwise is restricted to a dangerous condition that arises on the public property at the time injury

occurs, even though the injury's effects are felt on private proper-
ty. *Ibid.* *See also Russo Farms, Inc. v. Vineland Bd. of Educ.,*
144 *N.J.* 84, 105–06, 675 *A.*2d 1077 (1996) (permitting recovery
where dangerous condition (improper strain-drainage system) on
public property caused damage on adjacent private property);
*Saldana v. DiMedio,* 275 *N.J.Super.* 488, 501, 646 *A.*2d 522
(App.Div.1994) (holding that TCA permitted cause of action for
fire that started on public property and spread to adjacent private
property).

The majority's reliance on those and other cases ignores that in
each case there was no temporal disconnect between the danger-
ous condition, which the public entity allowed to occur and for
which it was responsible, and the injury. So, too, in *Roe v. New
Jersey Transit Rail Operations,* 317 *N.J.Super.* 72, 80, 721 *A.*2d
302 (App.Div.1998), *certif. denied,* 160 *N.J.* 89, 733 *A.*2d 494 (1999),
the dangerous condition caused by the permanently bolted-open
gate on public property existed at the time of injury. Nor does
*Ayers v. Township of Jackson,* 106 *N.J.* 557, 525 *A.*2d 287 (1987),
provide assistance in this matter. There we addressed the types
of damages a plaintiff could claim under the Tort Claims Act. *Id.*
at 569, 525 *A.*2d 287. Although the decision does not address
application of *N.J.S.A.* 59:4–2, it is apparent that the dangerous
condition of a leaching landfill existed on public property at the
time it caused injury by contaminating the groundwater and
underlying aquifer. *Id.* at 567, 525 *A.*2d 287.

It follows, then, that the majority lacks a firm foundation in
asserting legislative acquiescence. The TCA literally does not
authorize recovery for injuries occurring on spatially disconnected
private property at a time distant from when the dangerous
condition existed on public property. The Legislature simply did
not provide a remedy for what I have characterized as the
transport cases. Indeed, a contrary conclusion requires us to
ignore the obvious fact that the temporal connection to the point of
injury is a significant fact in determining reasonableness of the
public entity's conduct.

The TCA's liability provisions are to be construed narrowly, consistent with the statute's limitations, and liability imposed only when the TCA requires it. *N.J.S.A.* 59:1–2. We should not turn that analysis on its head in this matter. The Appellate Division below properly focused on "whether the property was in a dangerous condition at the time of the injury" and reasoned as follows:

> Deptford theorized that the firework was the dangerous condition. Accepting the firework as the dangerous condition, it follows that the property was in a dangerous condition at the time [the child] lit it and was injured. Indeed, the judge found that "[i]f you carry around a bomb, according to this statute, the dangerous condition is when it goes off." However, in our view, the difficulty with this analysis is that the firework at the time it went off and injured [the child] was not "public property" within the definition of *N.J.S.A.* 59:4–1(c), for the following reasons.

> First, Deptford did not own the firework. The 1995 contract between Deptford and Girone was not a sales contract; it was a services contract in which Girone agreed to furnish a licensed pyrotechnician, fireworks, and all personnel and equipment necessary to execute the fireworks display.

> \* \* \*

> Second, in our view, once [the child] removed the firework from the park, it was no longer "controlled by the public entity," as required by *N.J.S.A.* 59:4–1(c). That is, ... Deptford no longer had control over the dangerous condition and did not have the ability to correct it by finding and disposing of the unspent firework while it sat in the shed at [the child's] house. Consequently, assuming the unspent firework was the dangerous condition, we conclude that the firework at the time it went off and injured [the child] was not public property for purposes of liability under the Tort Claims Act.

> Plaintiffs have theorized that the park was the dangerous condition. Accepting the park as the dangerous condition, it follows that it was no longer in that condition after [the child] took the unspent firework home. Thus, the park was not in a dangerous condition at the time he lit the unspent firework.

> Even assuming that plaintiffs can establish a dangerous condition with sufficient degree for the issue to go to a jury, they cannot prove, as a matter of law, the element required for liability under *N.J.S.A.* 59:4–2 that "the property was in dangerous condition at the time of the injury." Moreover, the principle is well established that courts must exercise restraint in accepting novel causes of action. See Margolis & Novack, comment on *N.J.S.A.* 59:2–1. We see no need to shoehorn this novel case into the dangerous condition of public property concept contemplated by the TCA in *N.J.S.A.* 59:4–1 and 4–2. Obviously, this case does not fit comfortably under extant concepts of governmental responsibility. We see no necessity to torture the TCA to make this case fit under it in this circumstance.

Substantially for the reasons expressed in Judge King's opinion below, I would affirm the Appellate Division's dismissal of plaintiff's action against Deptford Township. The TCA language in question has clarity of meaning and purpose. It should not be discarded from the legislative design establishing when liability may attach under *N.J.S.A.* 59:4–2. Although I appreciate the seriousness of Brenden's injuries, I am constrained to honor the Legislature's intention in enacting the TCA. Local governmental sponsorship of a fireworks display is undertaken for the benefit of the entire community. I am convinced by the statute's text and history that lawmakers intended such activity, within the narrow factual context of this case, to carry the immunity urged by the public entity before us. I respectfully dissent.

Justice VERNIERO joins this opinion.

*For reversal*—Chief Justice PORITZ and Justices LONG, ZAZZALI, ALBIN and WALLACE—5.

*For affirmance*—Justices VERNIERO and LaVECCHIA—2.